----o----

John Catlett, *et al.*, Appellants, *vs.* Hester D. Catlett, Respondent.

1. *Wills—Under general law, what signing insufficient.*—As a general rule of law, where the name of the testator is not subscribed at the conclusion, but only appears in the exordium or body of a will, the instrument, in order to its validity, must have been in the handwriting of the testator and he must have intended the signature, wherever inserted, to be the authentication of the instrument, and must have contemplated no further signing.

Where the will concludes, "In witness whereof, I have hereunto set my hand," etc., a different signing being clearly contemplated, the formal recital of his name elsewhere in the instrument would be insufficient.

2. *Will—Signature—What necessary under the statute.*—Under the statute law of Missouri, a will written by an attorney at the request of a friend, out of the presence of the testator, and not subscribed, is not "signed" within the meaning of the statute (Wagn. Stat., 1364, § 3), although the name of the testator appear in the exordium or body of the will, and is invalid, although expressly assented to by him and duly attested in his presence.

The statute, *supra*, is imperative, and the "signing," therein referred to, must be construed to mean the affixing of the testator's name at the bottom of the will, either in his own handwriting or that of some one else by his direction.

*Appeal from the Sullivan Circuit Court.*

*G. D. Burgess,* for Appellants.

I. The paper propounded as the will of Henry Catlett, deceased, was not written in his presence nor by him, nor was the same signed by him or any person, by his direction, in his presence, as required by the statute. (Wagn. Stat., 1364, § 3; Rigg vs. Wilton, 13 Ills., 18; Dunlap vs. Dunlap, 10 Watts, 153; Northcutt vs. Northcutt, 20 Mo., 268.)

Our statute in regard to the manner of executing wills is mandatory, and a will not executed in conformity with the act is void. (McGee vs. Porter, 14 Mo., 611; see also Ruoff's Ap-

peal, 26 Penn. St., 219 ; Stricker vs. Graves, 1 Whart., 395 ; Ramsey vs. {Ramsey, 13 . Gratt. [Va.], 664 ; 2 Greenl. Ev., § 347 ; PublicAdm'r vs. Watts, 1 Paige Ch., 347 ; Northcutt vs. Northcutt, 20 Mo., 268 ; Selden vs. Coalter, 2 Va. Cas., 553 ; note with last case, no. 29, pages 211 & 212, § 12 ; 1 Red. Wills [2d Ed.] § 12, *supra*.)

The cases of Armstrong vs. Armstrong, 29 Ala. [N. S.], 538 ; Sarah Miles Will, 4 Dana [Ky.], 1 ; Couverse vs. Converse, 21 Vt. 168, so much relied on by the respondent, are cases where the will was written in the presence of the testators. The will in the case of Selden vs. Coalter, 2 Va. Cases, was also written in the presence of the testator. Where that is the case, there is perhaps some reason for saying, that it is properly executed, for then, although the will is written by another, the name of the testator is written in his presence and by his direction, and this might be considered as bringing it within the statute. But even this doctrine is denounced in the cases of Selden vs. Coalter, 2 Va., Cases 553 ; Dunlap vs. Dunlap, 10 Watts, 153 ; Red. on Wills, Vol. 1., pp. 211 & 212 [2 Ed.], § 12.)

It was immaterial under the statute of frauds, in what part of the will the testator's name was written, but the signature must have been made with the design of authenticating the nstrument. (2 Jarm. Wills, 115 ; Waller vs. Waller, 1 Grat., 454.)

*Alex. W. Mullins and George W. Easley*, for Respondent.

I. The material inquiry in the case at bar is : What will amount to a sufficient signing by the testator?

In seeking the proper construction of the word *signed*, we are greatly aided by the adjudications that immediately followed the first enactment of the statute in England. In Lemayne vs. Stanley, 3 Levinz. 1, the will was written by the testator, who commenced it as follows : "I, John Stanley, make this my last will and testament," etc. He sealed, but did not sign it at the bottom. It was subscribed by the requisite num-

ber of witnesses, in his presence. This was held to be a suffi-
cient signing. And in Morrison vs. Turnour, 18 Ves., 183,
Lord Eldon is said to have observed, "that the decision in the
case of Lemayne vs. Stanley, could not be sustained, unless
you add one or two circumstances; either that the witnesses
were present when he, the testator, was writing the will, which
Lord Hardwick observes was not a natural presumption; or,
if they were not present, that he acknowledged it to be
in his writing when he called them in to attest; certainly
expressing his opinion that such acknowledgment would do."
(1 Pow. on Dev. 75, note 9.) With this modification, Lemayne
vs. Stanley has been accepted as the law in the following
among other English cases: Hilton vs. King, 3 Lev., 86;
Grayson vs. Atkinson, 2 Ves. Sr., 454; Coles vs. Trecothick,
9 Ves., 249; Morrison vs. Turnour, 18 Ves., 183. See also
the following authorities: 2 Greenl. Ev., § 674; 1 Jarm. on
Wills, 70, 112, &c., of 2 Am. Ed.; 1 Williams on Ex. 56 to
63; 3 Greenl. Cruise, [2d. Ed.] 51; Tit. 38, c. 5, § 10; Id. p.
55, §§ 17, 18, n. 1; Cravens vs. Faulconer, 28 Mo., 19.

The construction of the word *signed*, as required by the
Statute of Frauds, as settled by the British Courts at the time
of the adoption of our Statute of Wills, is that, if the party
making such paper for the purpose of authenticating the same,
writes his name, either by his own hand or the hand of an-
other, or adopts one written or printed by another, in any part
of the paper, this is a sufficient signing; and the construction
of the statute by the British decisions, before the adoption of
our statute ought to be regarded as the construction which our
legislature intended to be put upon our own. (Armstrong vs.
Armstrong, 29 Ala., [N. S.] 538.) And the doctrines of the
English cases before 1838, have been followed by others of the
American Courts. (Selden vs. Coalter, 2 Va. Ca., 553; Sarah
Miles' Will, 4 Dana [Ky.], 1; Converse vs. Converse, 21 Vt.,
168, 286.)

It is a point well settled, that if the name of the party ap-
pears in the memorandum, and is applicable to the whole
substance of the writing, and is put there by him or his au-

thority, it is immaterial in what part of the instrument it appears; whether at the top, in the middle or at the bottom. (Cleason vs. Bailey, 14 Johns., 486; see also Browne Frauds, § 376; 4 Kent's Com., 511, page 687 [11th Ed.], note b.)

II. It was not an insuperable objection to the will, that testator's name was not written in his presence. (Schneider vs. Norris, 2 Maule & Selw., 286; 8 Esp., 181; 2 Bos. & Pull., 238.)

III. When a will is not written by the hand of the testator, and his name is not subscribed thereto, the material question is, whether he intended the paper to operate as his will without any further execution? Did Catlett contemplate the further signing of the will? Evidently he did not. It will be noticed that Catlett followed carefully Miller's instructions, as conveyed to him by Judge Davis. These instructions impressed upon Catlett the necessity of the attestation of the two witnesses; but did not contain the least intimation to direct Catlett's mind to the fact that he ought to sign the will himself. And the fact that Catlett called upon Davis and Yoho to witness the will, is wholly inconsistent with the idea that he intended to sign it himself, at some future time.

Catlett declared the paper to be his will; had it witnessed by his neighbors; handed it to his father-in-law, with directions to him to have it conveyed to Mrs. Catlett, which was done, and the paper put away in a secure place; and so far as the evidence shows, was neither spoken or thought of after that by Catlett, who died entertaining the belief that he had formally made his will, a belief that was shared in by his family, neighbors and friends.

But the opponents of this will may say that the will is incomplete on its face, because Miller added the clause, "In witness whereof," &c. And it is true that this clause does furnish some evidence of an intention to formally sign it, but it is only slight evidence of such intention, and may be rebutted by any other evidence which will show that no such intention, in fact, existed. Sarah Miles' will concluded: "In ratification of which, I have hereunto set my hand and affixed

my seal," &c. (4 Dana, 1); see also Medling vs. Pace, 14 Ga., 596, cited in 14 U. S. Dig., 594, §§ 84, 90; 1 Williams Ex., 61, and the authorities collected.

VORIES, Judge, delivered the opinion of the court.

Henry Catlett died at the county of Sullivan, on the 30th day of October, 1872, without issue. He left surviving him, among the plaintiffs his brothers and sisters, and his wife, the defendant. He left the following instrument of writing, purporting to be his last will and testament: "I, Henry Catlett, of the county of Sullivan, in the State of Missouri, do make and publish this, my last will and testament: "1st. I, give and bequeath, to my beloved wife, Hester Druzilla, to have and to hold in fee, all my lands and tenements and hereditaments, with the appurtenances, whereof I am seized, situate, lying and being in the county of Sullivan and State of Missouri, and described as follows to-wit: The south (1-2) one-half of the south-east (1-4) one-fourth, and the north (1-2) one-half of the south-east (1-4) one-fourth, of section (11) eleven, township (62) sixty-two, and Range (20) twenty, being in all, (160) one hundred and sixty acres, more or less. In addition to the above, I also bequeath to my wife, Hester Druzilla, all my monies, credits and chattels, of every description; to have and hold or to dispose [of] at will. And I hereby appoint my wife, Hester Druzilla, executrix of this my last will and testament. In witness whereof I have hereunto set my hand, this 24th day of October, A. D. 1872. "Signed, published and declared, by the said Henry Catlett, as, and for, his last will and testament, in presence of us, who, at his request, have signed as witnesses to the same, in his presence, and in the presence of each other.

WILLIAM W. DAVIS.<br>JAMES W. YOHO."

This paper was presented for probate, to the Hon. James Beatty, Judge of Probate for Sullivan county, on the 27th day of November, 1872; and was admitted to probate on the evidence of the subscribing witnesses, and a certificate thereof granted, on the third day of December, 1872.

This action was brought on the 26th day of February, 1873, by the plaintiffs, in the Circuit Court of Sullivan county, to contest the validity of said will, on the sole ground that the same was not executed in conformity with the statute. The cause coming on for trial at the October Term, 1873, of said Circuit Court, an issue was made up, whether the writing produced was the will of said Henry Catlett, or not; and such issue was submitted to a jury. The defendant to sustain the issue upon her part, introduced as a witness, Judge William W. Davis, who testified as follows: (The paper produced as the will of Henry Catlett being shown him,) "The signature to this paper, William W. Davis, is mine. I signed my name there at the request of Henry Catlett, deceased. He asked me to do so to witness that this was his last will and testament. Mr. Catlett was then at home, at his residence, lying on his bed, in the west room. I was in the same room, when I signed the will, perhaps in two feet of his bed. Jacob Potts, and his wife, (Mrs. Catlett's mother,) Mrs. Mary Couch, Susan Ann Gibson, and James W. Yoho, were also present when the will was signed. When I first went to Catlett's that day, he told me that he wanted to make a will, and wanted me to write it for him. I advised him to have it done by a lawyer, and told him, that if he desired to make a will, and would tell me how he wanted it, that I would get a lawyer in Milan to write it for him. He said he would do that. He then told me how he wanted the will made; that he wanted all of his property willed to his wife; that he wanted her to have it. I came to Milan, and went into Miller's office, and told him what Catlett wanted; who he wanted his property to go to, and how he wanted his will made; and Mr. Miller wrote this paper, which I took directly to Henry Catlett, and told him that I had the will for him; and that I would read it to him, to see whether it suited him, or not. I then read this instrument in his hearing and he said it was exactly as he wanted it. I told him that Mr. Miller said it would have to be witnessed by two witnesses, and about that time James W. Yoho, who was about

to leave the house, and about the time he was at the door of the room we were in, was called by Catlett who said: 'James, I want you to witness this will.' He then asked me to witness it, and both Yoho and I witnessed it. Yoho occupied about the same place when he signed the will, that I did when I signed it. The distance may have been as much as six feet from the bed. I am not positive as to the distance—it was on that side of the room next to the bed. There was no obstruction between Catlett and Yoho and myself when we signed the will. At that time Catlett was tolerably weak—able, though, to be up and,go round the house. He was sitting up when I went there that day. Mr. Catlett's age was about thirty—not far from that. He was then of sound mind, and as rational as I ever saw him. After we had witnessed the will, it was left there, perhaps with his wife, Hester D. Catlett. When Catlett first commenced talking to me about the will, he gave me his reasons for it. The defendant's attorneys then asked the witness to state what it was the testator said? To which the plaintiff's attorney objected, and the objection was sustained, &c. On cross examination, the witness stated: Mr. Miller wrote the will at his office here in town, and Catlett was at home, one and a half miles away. Miller was not there nor was Catlett in town. Catlett lived a few weeks after the making of the will.

James W. Yoho was next introduced by the defendant, and testified as follows: "The signature of James W. Yoho, on this paper, is mine and in my hand writing. I was at Henry Catlett's house (the person named in this paper as testator,) when I wrote my name to the paper. I was requested by Catlett to put my name there as a witness. Catlett said he wanted me to write my name as a witness to the will. I dont think I was over one and one-half or two feet from Catlett when I signed. I can't just say whether he was sitting up when we signed or not; but he was out walking round the house when I went there. There was no obstruction between Catlett and me. "I think I was leaving, and had got to the door, when Catlett called me back and asked me to sign

it as a witness. Heard Judge Davis read the will over to Catlett, and Catlett said that was his will—that was the way he wanted it. I had gone there after some lime and Judge Davis came from town, and what I have related then passed and I went home. His mind was about as good as it ever was; it was sound."

Mrs. Mary Couch was next sworn as a witness, and testified as follows: "I was at Catlett's when Judge Davis brought the will. I was there when Mr. Davis and Mr. Yoho signed it. I heard Mr. Catlett ask Mr. Yoho to stay, and then Judge Davis asked Mr. Catlett if that was his will; if it was written the way he wanted it, and he said it was. I saw it in Mr. Davis' hand, and saw Mr. Yoho sign it; saw Mr. Davis hand the will to Mr. Catlett, and Mr. Catlett hand it to Mr. Potts, and told him to give it to Hester, meaning his wife. I was not in the room all the time after Judge Davis brought the will."

Mrs. Susan Gibson testified as follows: "I was at Mr. Henry Catlett's the day Judge Davis brought the will over there. I was in the room when Judge Davis was reading the will. When he read it, he handed it to Mr. Catlett, and asked him if that was the way he wanted it, and Mr. Catlett said it was just right. I saw Judge Davis and Mr. Yoho sign it. He asked Mr. Yoho to stay and witness the will. Mr. Yoho was about starting home when Mr. Catlett asked him to stay. Judge Davis and Mr. Yoho, when they signed, were in Mr. Catlett's presence—only a few feet from him."

J. H. Couch testified as follows: "I was acquainted with Henry Catlett. I had a conversation with him before his death about—weeks, he told me that he intended that his wife should have his property, and that he intended to make a will to that effect. This was in July before his death; he died in October, 1872."

Aaron Glidewell was next sworn, and stated that "during the year 1871, he was at Mr. Couch's, stacking grain, and heard Henry Catlett, now deceased, say that he intended to fix things so that his wife would get all of his property after

22—VOL. LV.

his death. I was then stacking and he was pitching. Catlett was a consumptive man."

Hester D. Catlett was next introduced as a witness in her own behalf, and testified as follows: "I was at home the day my husband, Henry Catlett, made his will, I was not in the room where he was at the time that the witnesses, Judge Davis and Mr. Yoho, signed the will. My father, (Mr. Potts,) conveyed it to me, and I kept it in a box until it was sent to the Probate Court. This paper (the will produced) is the one given me by my father, and the one I kept."

The defendants next offered to read, by way of producing it before the jury, the foregoing paper, as the last will and testament of Henry Catlett deceased. To the reading of which said instrument of writing to the jury, the plaintiffs, by their attorney, at the time objected, for the following reasons, to-wit: Because the same had never been signed by Henry Catlett, or by any person by him directed in his presence. Because the same had never been executed by Henry Catlett. Because the same was illegal, irrelevant, and not competent testimony for any purpose. Which objections were overruled, and said paper read to the jury, and exceptions properly taken.

This was all the evidence offered. Whereupon the plaintiffs asked an instruction in the nature of a demurrer to the evidence, which was refused by the court, and exceptions saved. The court then gave the following instruction on behalf of the defendant.

First. Although the jury may believe from the evidence that Henry Catlett did not write his name to the paper here produced as his will, either at the bottom, or in any part thereof; yet, if the jury believe from the evidence that the said Henry was on the 24th day of October, 1872, over the age of twenty-one years, and was then of sound mind, and that on that day the said Henry requested the witness, Davis, to have the will written for him, and that the said Davis did, in pursuance of such request, procure Miller to write said will, and that after the same was written, the said Davis read the

same in the presence and hearing of the said Henry Catlett, and that the said Henry then and there adopted the same, and requested the witnesses, Davis and Yoho, to sign the same as subscribing witnesses thereto, to attest the fact that he had executed said will, and that they did so, and that the said Henry then and there published the said paper to be his will, then the jury will find the issue for the defendant.

\* \* \* \* \* \* \* \* \* \*　\*

Whereupon the plaintiffs took a non-suit with leave, and afterwards within the proper time filed their motion to set aside &c., which being overruled, they saved the foregoing exceptions and appealed.

It will be seen from the foregoing statement of the case, that the only question presented for consideration is, whether the paper presented for probate as the last will and testament of Henry Catlett, has been executed in a manner to give it effect as a will, under the provision of our statute concerning Wills.

The statute provides, that " Every will shall be in writing signed by the testator, or by some person by his direction in his presence, and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." (Wagn. Stat., 1364, § 3.) No will, not executed in the manner prescribed in the above section, can be valid, except in a few special cases provided for in the statute, which need not be named as they cannot affect this case. It is not pretended that the paper exhibited in this case as the will of Henry Catlett,was signed or subscribed by him at the conclusion or bottom of the writing in the usual way; but it is contended that it is a sufficient compliance with the statute if his name appears in any place in the instrument, either by the way of the usual exordium at the commencement of the will, or otherwise in body of the instrument. There is no doubt but the English courts, out of an extreme anxiety to sustain wills and to evade the statute of frauds, where the wills devised real estate, have held in numerous cases, that it was a sufficient signing of the will under the statute of frauds, that the name of the testator should appear in the body or

commencement of the will. These decisions have been followed in most of the States in this country. It could serve no valuable purpose to refer to the numerous decisions on this subject, as they are familiar to every intelligent member of the profession. Justice Kent in his commentaries on this subject says: "The English courts, from a disposition to favor wills, departed from the strict construction and obvious meaning of the statute of frauds, and opened a door to very extensive litigation. It was held to be sufficient that the testator wrote his name at the top of the will by way of recital; and such insertion of his name was deemed signing the will within the statute of frauds." (4 Kent's Com., p. 631.) Also in Jarman on Wills, it is said: "It was immaterial under the statute of frauds in what part of the will the testator's name was written, and where the whole will was in the testator's handwriting, the name occurring in the body as the usual exordium "I. A. B. do make, etc.," was decided to be a sufficient signing. But the signature, whatever was its local position, must have been made with the design of authenticating the instrument, for it would seem that if the testator contemplated a further signature which he never made, the will must be considered as unsigned." It has been held in the cases on the subject, with a very few exceptions, that in order to the validity of a will where it is not subscribed at the conclusion or foot of the instrument, but only appears at the commencement or in the body of the instrument, the will must, in order to its validity, have been in the handwriting of the testator, and he must have intended the signature, wherever inserted, to be the authentication of the instrument, and have contemplated no further signing. With this view of the case it is difficult to see how this will could be upheld under the statute of frauds as construed by the course of decisions referred to; for the will in this case was not in the handwriting of the testator, and by the words at the conclusion of the instrument "in witness whereof I have hereunto set my hand this 24th day of October, A. D. 1872," it was clearly contemplated, that a different signing was intended besides the

formal recital of his name at the commencement of the instrument. But it must be also recollected that in the execution of wills in this State, the statute of frauds is not the only statute to be kept in view; but in order to the validity of a will the statute in reference to wills must also be complied with. The 3d section of the statute. before referred to, (Wagn. Stat., 1364) provides that every will shall be in writing, signed by the testator or by some person by his direction, in his presence, and shall be attested by two or more competent witnesses, etc. It is not pretended in this case, that the will was signed by the testator either at its conclusion or elsewhere, nor is it pretended that the will was ever written in his presence; but is clear that the will was written by an attorney, at his office, at the request of a friend of the deceased. Now if we should admit that the name of the testator, as recited at the commencement of the instrument, would be a sufficient signing if made in the handwriting of the testator, would the will even then be good, under the statute, when written by another and not in his presence? In other words, is the direction of the statute requiring a will which is signed by another person for the testator, to be so signed at the request of the testator and in his presence, imperative; or may the will signed out of his presence, and at the request of another be adopted by the testator and thereby become valid? In order to answer this question, it will be proper to refer to former decisions of this court, on questions somewhat similar in principle. In the case of McGee vs. Porter, the paper attempted to be probated as the last will of McGee, had been executed under the law then in force, in which there was a provision which required that " every person who shall sign the testator's name to any will by his direction, shall subscribe his own name as a witness to such will, and state that he subscribed the testator's name, at his request;" it was held by the court, that this provision of the statute was mandatory, and if the will was not so witnessed by the person subscribing the testator's name to the instrument at his request, the will so attempted to be made, was void. The same point was de-

cided, and in the same way, in the case of St. Louis Hospital Association vs. Williams, 21 Mo. 17, and in Northcutt vs. Northcutt, 20 Mo. 266. It would be difficult to see how the attestation of a fact should be mandatory and essential, while the fact itself would not be essential to the validity of the will. But we do not rest this case entirely on the ground that the will was not written and the testator's name inserted therein in the presence of the testator. We believe that the proper and rational construction of the statute is that the will should be signed by the testator; that the words in the statute requiring the will to be signed by the testator, or by some person by his direction and in his presence, means that the instrument as written shall be subscribed by affixing the name of the testator in the usual way of executing other instruments of writing; and that not only must the statute of frauds be complied with, but that the statutes concerning Wills must also be complied with; and that the words of the statute should be construed by their ordinary import and meaning, as our statute requires. With the views above expressed, the judgment must be reversed and the cause remanded, when a proper judgment can be rendered in the cause. The other judges concur.