ALBERT H. MEADS & another *vs.* EUGENIA M. EARLE.

Norfolk. January 20, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Will,* Execution.

Upon the issue of the execution of a will, it appeared that the alleged testatrix was a woman of superior education, intelligent and self-reliant, and that she was stopping temporarily at a hotel in the city of New York for the purpose of starting in a day or two on a voyage to Europe, that she had procured a blank form for making a will, which had a printed exordium, leaving blank spaces for the name and residence of the person making the will, and, after an extensive blank space for the body of the will, had a printed *in testimonium* clause and below it a printed clause of attestation to be signed by witnesses, that there were three dotted lines indicating where the subscribing witnesses were to sign, but that there was no line dotted or otherwise between the *in testimonium* clause and the attestation clause indicating where the testator was to sign, that the alleged testatrix filled in the blank spaces in the exordium by writing in her name and residence, crossing out inapplicable printed words, and wrote in the blank space provided for the body of the will about twenty bequests, dealing with her estate with great detail in clear and intelligent language, that, after the attestation clause and below the three dotted lines indicating the places for the signatures of the witnesses, she wrote a clause nominating executors and requesting that they should be required to give no bonds, that, before the witnesses signed, every written word of the instrument was in the handwriting of the alleged testatrix, that she then took the instrument to another woman stopping at the same hotel and asked her to sign it as a witness to her will, saying that it required three witnesses, that the alleged testatrix sat down and wrote something on the paper which the witness did not read and then handed it to the witness who signed her name where the alleged testatrix told her to, that the alleged testatrix was by the side of the witness when she signed, that later on the same day two other witnesses also signed the attestation clause in the presence of the alleged testatrix after she had told them that the instrument was her last will and had asked them to sign as witnesses but had not otherwise mentioned her signature nor called it to their attention, that shortly afterwards the alleged testatrix caused this instrument to be deposited in her safe deposit vault box, where it remained until her death. *Held,* that this evidence warranted a finding that when the alleged testatrix wrote her name in the exordium of the instrument she intended it to be the signing of her will, and that this intent continued when all of the witnesses signed, and that therefore the will was properly signed and the signature properly attested in accordance with the requirements of R. L. c. 135, § 1.

HAMMOND, J.　This was an appeal from a decree of the Probate Court disallowing an instrument as the last will of Sarah J. Armstrong.　The case was heard by a single justice of this court* upon an inspection of the will, the agreed facts and the depositions of the three subscribing witnesses.　The appellee requested the judge to rule as matter of law that the instrument was not signed by the testatrix and attested and subscribed in her presence by three competent witnesses in accordance with the requirements of R. L. c. 135, § 1.　The justice declined so to rule and found as facts " that so far as the will is in manuscript, the handwriting including her name or signature is that of Sarah J. Armstrong; that although she did not sign at the end of the instrument, yet when she wrote her name at the beginning of the will, it was with the intention that this act was a signing of the will; that independently of the attestation clause, she by words and conduct acknowledged and declared the will before the subscribing witnesses and that the subscribing witnesses signed the attestation clause in her presence at her request and upon her acknowledgment and declaration that it was her will, although neither of them saw her signature."

Having so found he ruled that the document was signed, attested and subscribed " within the meaning of the statute," and that it was a valid will.　The case is before us upon his report. If the ruling requested by the appellee should have been given, a decree is to be entered affirming the decree of the Probate Court; otherwise a decree is to be entered reversing that decree, admitting the will to probate and remanding the case to that court for further proceedings.

The findings of the single justice are to stand unless plainly wrong.　At the time of the execution of the will Miss Armstrong was temporarily stopping at the Manhattan Hotel in New York city, on the eve of a voyage to Italy.　It is a reasonable inference from the testimony that the will was drafted just before its execution.　She had procured a blank form containing at the beginning the following printed words, to wit: " Be it remembered that I, . . . . of . . . . . in the Commonwealth of Massachusetts, being of sound mind and memory, but knowing

---

* *Braley,* J.

the uncertainty of this life, do make this my last will and testa-
ment. After the payment of my just debts and funeral charges,
I bequeath and devise as follows : " At the end of the blank was
printed the *in testimonium* clause, blanks being left for the date,
and following that clause was the printed attestation clause as
follows: " On this . . . day of . . . A.D. 19 , . . . . of . . . . .
Massachusetts, signed the foregoing instrument in our presence,
declaring it to be . . . last will ; and as witnesses thereof we
three do now at . . . request, in . . . presence, and in the pres-
ence of each other, hereto subscribe our names." Between the
printed words at the beginning of the will and the printed *in
testimonium* words at the end, there was an extended blank space
for the body of the will, but the space between the latter clause
and the attestation clause was small and there was no line,
dotted or otherwise, indicating the place for a signature, while
following the attestation clause there were three dotted lines
indicating where the subscribing witnesses were to sign.

With this blank before her she begins, apparently unaided, to
write her will. She first makes the proper changes in the *exor-
dium*. She fills the blank space after the word " I " with her
name. She writes in the next blank space, " Cincinnati, Ohio,"
and crosses out the words " in the Commonwealth of Massachu-
setts." As thus changed the *exordium* reads: " Be it remem-
bered that I, Sarah J. Armstrong, of Cincinnati, Ohio, being of
sound mind," etc. She proceeds to write in the blank space
provided for the body of the will. The will deals with her es-
tate in great detail, containing nearly twenty different bequests.
She then fills the proper spaces in the *in testimonium* and attest-
ation clauses, putting her name and residence and the pronouns
in the proper places in the latter clause. After the attestation
clause and below the dotted lines indicating the places for the
signatures of the three witnesses, she writes the clause nominat-
ing the executors and requesting that they be required to give no
bonds. Every written word is in her handwriting. The will is
clearly and intelligently drawn. The evidence of the subscribing
witnesses shows that she was a woman of refinement and superior
mental endowment. She had been for several years in charge of
a young ladies' school ; and from the glimpses we get of her it is
not difficult to detect her resolute and self-reliant nature. There

is no indication that she was not in good health. In a day or two she was to take the steamer for Italy.

With this document this intelligent, self-reliant woman came to Miss Hall, the first witness, who describes the interview thus: "I was at the Manhattan Hotel writing home when Miss Armstrong came up to me and asked me if I would sign her will as a witness. She said: 'I would not ask this of you, but Miss Hunter and the Clays cannot because they are mentioned in the will, and it requires three witnesses; the Misses Jaudon have said they would.' She then sat down and wrote something on the paper which I did not read, then handed it to me and I signed my name where she told me to; she was by my side when I signed it."

Subsequently, and apparently upon the same day, the other two witnesses signed. Each of the three witnesses testified in substance that Miss Armstrong stated that the document was her last will and asked her to sign as a witness. In no other way did Miss Armstrong mention her signature or call it to the attention of the witnesses. Shortly afterwards the instrument, thus written and thus attested, was deposited at the request of Miss Armstrong in her safe deposit vault, and there remained until her death.

There can be no doubt that she intended to make and supposed she had made a valid will. The care she took in writing the paper, in seeing to its attestation, and in putting and keeping it in a safe place shows that. She does not appear to have been advised or assisted by any one. She personally superintended the whole work. There was however no signature at the end; and it is contended by the contestants that the single justice was not warranted in finding that she wrote her name at the beginning *animo signandi*.

The finding must be interpreted to mean not simply that after writing her whole will she adopted as her signature her name as written previously in the *exordium*, but that at the time she wrote her name there she intended that it should stand as her signature to the will when completed, and that this intent continued to the end. Such a finding is perfectly consistent with what she did, and is not inconsistent with any act of hers. It explains any apparent incongruity in the evidence. It welds all

the circumstances into one harmonious whole and is supported
by the evidence.

The will was therefore properly signed. *Lemayne* v. *Stanley*,
3 Lev. 1.    And the signature was properly attested. *Dewey* v.
*Dewey*, 1 Met. 349, and cases cited. *Adams* v. *Field*, 21 Vt. 256.
The ruling requested by the appellee was properly refused.

In view of this finding as to Miss Armstrong's intent at the
time she wrote her name in the *exordium*, it becomes unnecessary
to consider the question whether there is evidence of a subse-
quent adoption of the name as her signature, even if originally
written with no intent to have it finally stand as such.

Upon the question as to the kind of evidence required to prove
such adoption, the cases are not in complete harmony.    Among
the authorities bearing upon this, as well as the general question
involved in the case, see in addition to the authorities here-
inbefore cited the following : *Hall* v. *Hall*, 17 Pick. 373 ;
*Hogan* v. *Grosvenor*, 10 Met. 54 ; *Ela* v. *Edwards*, 16 Gray, 91 ;
*Penniman* v. *Hartshorn*, 13 Mass. 87 ; *Nickerson* v. *Buck*, 12
Cush. 332 ; *Right* v. *Price*, 1 Dougl. 241 ; *Grayson* v. *Atkinson*,
2 Ves. Sr. 454 ; *Griffin* v. *Griffin*, 4 Ves. 197, note ; *Morison* v.
*Turnour*, 18 Ves. 175, 183 ; *Ellis* v. *Smith*, 1 Ves. Jr. 11 ; *Arm-
strong* v. *Armstrong*, 29 Ala. 538 ; *Merritt* v. *Clason*, 12 Johns.
102 ; *Clason* v. *Bailey*, 14 Johns. 484 ; *In re will of Booth*, 127
N. Y. 109 ; *Catlett* v. *Catlett*, 55 Mo. 330 ; *Warwick* v. *Warwick*,
86 Va. 596 ; *Waller* v. *Waller*, 1 Gratt. 454 ; 1 Jarm. Wills,
(5th Am. ed.) 79, 80; 1 Redf. Wills, (4th ed.) 210 *et seq.*

In accordance with the terms of the report a decree is to be
entered reversing the decree of the Probate Court, admitting the
will to probate and remanding the case to that court for further
proceedings.

*So ordered.*

*J. S. Patton*, (*F. J. Ranlett* with him,) for the appellee.

*J. G. Palfrey*, (*H. Twombly* with him,) for the appellants.