In the matter of the estate of CORNELIUS PHELAN, deceased.

[Decided July 9th, 1913.]

1. Under the statute requiring that all testaments shall be signed by the testator, which signature shall be made or the making thereof acknowledged by him, and the writing declared to be his last will, in the presence of two witnesses, the name in the caption of a holographic will, commencing, "I, Cornelius or Corniel F. Phelan * * * do make, publish and declare this my last will and testament," not written in the presence of witnesses, nor acknowledged before them to be his signature, was merely *designatio personæ*, not amounting to a signature, and the name in an attestation clause reading, "Signed * * * and declared by the said Cornelius or Corniel F. Phelan to be his last will and testament in the presence of as witnesses," would not be sufficient as a signature to the will, in the absence of an intention that it should be so; the word "said" merely identifying the person named as the one above mentioned.

2. Evidence on appeal from a decree refusing probate of a holographic will, *held* insufficient to show that either one of the written names in or under the instrument was acknowledged by the testator as his signature.

3. Under the statute declaring that the testament must be signed, but not expressly requiring it to be subscribed, the name of the testator by himself written in or on any part of the testament, in the presence of witnesses, even if expressed in the third person, with intent thereby to make that name his signature, satisfies the statute.

4. The name of the testator, written in the attestation clause, reading as follows: "Signed &ast; &ast; &ast; by the said Cornelius or Corniel F. Phelan to be his last will and testament in the presence of as witnesses," and intended by testator to constitute the signature to his last will, as required by law, was a signature which made the will effective.

On appeal from a decree of the Cape May county orphans court refusing probate of a will.

*Mr. Peter Backes,* for the appellant.

*Mr. William B. Gourley,* for the respondents.

WALKER, ORDINARY.

The document in question in this cause is a holographic will of the late Rev. Cornelius F. Phelan. It commences as follows:

"I, Cornelius or Corniel F. Phelan, at present Rector of St. Joseph's Church, Sea Isle City, N. J., being of sound mind, memory and understanding, do make, publish and declare this my last will and testament."

The paper was not signed by the testator, that is, it was not signed in the way wills are usually signed. The proponent urges that the name of the deceased written in the caption or attestation clause of the will is to be taken as his signature.

When the will was presented to the surrogate of Cape May he, conceiving there was, on its face, doubt as to its validity, issued citations to all persons concerned to appear in the orphans court according to the statute. The judge of that court, after hearing the witnesses sworn in the proceedings for probate, declared the testament to have lacked due execution and refused to admit it.

The facts, succinctly, were these: On the day the will bears date, November 1st, 1909, Father Phelan went to the house of Mrs. Maiswinkle at Sea Isle City. With her lived her niece, Elizabeth Hartmann. The parties were all well acquainted. The priest told the women that the paper was his last will, and requested them to sign it as witnesses. He read it over to them. It then lacked the attestation clause, and had no signature. At

the same time he said he had something to add to the paper and
sat down and wrote the attestation clause in the presence of the
witnesses.   It reads as follows:

"Signed, sealed, published and declared by the said Cornelius
or Corneil F. Phelan to be his last will and testament in the
presence of as witnesses."

There is no space between the body of the will, or rather the
testimonium clause and this clause, and the signature usually
written in the space between them is absent.   He then read the
whole will over again to the witnesses including the attestation
clause and asked them to witness it.   This they did by signing
their names at the foot of that clause, all three being present at
the same time.

In giving their testimony before the orphans court neither
Mrs. Maiswinkle nor Miss Hartmann said that the testator ac-
knowledged his written name at either end of the paper to be
his signature.   The one in the caption could only be made his
signature to a will by acknowledging it as such, for he did not
write it in the presence of the witnesses.   The one in the at-
testation clause could be his signature to a will (because he
wrote it in the presence of these witnesses) if, and only if, it
were his intention to make it his signature for the purpose of
the execution of the will instead of writing a more formal and
disconnected signature.   In other words, instead of the usual
and familiar "signing."

Our present statute of wills requires that all testaments shall
be signed by the testator, which signature shall be made, or the
making thereof acknowledged, by him, and the writing declared
to be his last will in the presence of two witnesses, &c.

As already remarked, the name "Cornelius or Corniel F. Phe-
lan" in the caption of his will was not written in the presence
of the witnesses, nor was it acknowledged to be his signature be-
fore them, as I understand it.   The words composing his name
were merely *designatio personæ*, and so too are the same words
in the attestation clause, which reads in part:   "Signed, sealed,
published and declared by the said Cornelius or Corniel F.
Phelan."   The name is here expressed in the third person, and
is prefixed with the word "said," a word used to identify the

person named as one above mentioned unless, as already re-marked, the testator *intended* his written name in the attesta-tion clause to be a signing or execution of the will by him. On its face it does not purport to be a signature or sign manual for the purpose of vitalizing the instrument. The surrogate was therefore clearly right in his view of the doubtful character of the instrument on its face, but the orphans court does not ap-pear to have been correct in refusing to probate it after the evidence was in.

After appeal to this court leave was obtained to take further testimony and to further examine the witnesses to the will, Mrs. Maiswinkle and Miss Hartman. In the subsequent testimony Mrs. Maiswinkle declared Father Phelan said: "I want you two to be witnesses to this my last will and testament, and this is my signature," the paper being open before them at the time. On this examination Miss Hartman said Father Phelan de-clared: "This is my will and testament, and this is my signa-ture, and I want you two to be witnesses to my last will."

Former Judge Hildreth of Cape May was counsel for the proponent of the will before the orphans court. He was called in the prerogative court and testified that he had an interview with these two women prior to the time the matter came up in the orphans court. He called upon them for the express pur-pose of ascertaining if the deceased had declared his name to the paper purporting to be his will to be his signature—whether he had declared either of his names, the one in the caption or the other in the attestation clause, to be his signature—or whether he had declared that he had signed the will, and they both replied that he had not.

In their examination in this court they denied having had such an interview with Judge Hildreth. The judge's character and ability impels the court to believe that he well remembers the interview and what was said; in fact that he speaks the truth. This puts the women in the attitude of being mistaken or prevaricating. In my judgment they were at least mistaken. If they expect me to accept the testimony they gave on the hearing in the prerogative court they are bound to acknowledge that they mistakenly testified on oath at the hearing in the court

below. They themselves furnish indubitable evidence that they were mistaken on one hearing or the other, to say the least. Rejecting their testimony, as I do, with reference to the adoption by Father Phelan of either one of his written names in or under the instrument, as a signature, by way of making the *acknowledgment* permitted by the statute, it becomes my duty to inquire whether he intended his written name in the attestation clause to be the *signing* required by the statute.

That Father Phelan intended the paper writing offered for probate to be his last will and testament is apparent.

It should be stated in passing that the witnesses asked why he wrote his name "Corniel," and he answered that it was because some people called him "Cornelius" and others "Corniel," and that he did not want to have any mistake.

As already seen the statute of wills provides that the testament must be *signed.* It does not say it must be subscribed, and therefore the name of the testator by himself written in or on any part of the testament, he intending thereby that his name so written should be a signing of the will, satisfies the statute. The following quotation by Chancellor Williamson from English cases found in *Smith* v. *Howell, 11 N. J. Eq. (3 Stock.) 349* (at *p. 357*), are pertinent:

"If the defendant himself writes the agreement for the purchase of a leasehold house, and states his own name in the third person, as 'Mr. A. B. has agreed,' this is a good contract within the statute of frauds, though he does not otherwise sign the agreement. *Propert* v. *Parker, 1 Russ. & M. 625.* J. B. Bridges, being seized in fee of an undivided moiety of five hundred houses in Cable street, Liverpool, agreed to sell it to the plaintiff, and thereupon Bridges drew up the following memorandum in his own handwriting: 'July 26th, 1839. John Blakely agrees with J. B. Bridges to take the property in Cable street for the net sum of £248 10s.' The vice-chancellor was of opinion that the agreement was sufficiently signed to take it out of the statute of frauds, and decreed accordingly."

Our own cases of *Smith* v. *Howell, ubi supra; McVay* v. *McVay, 43 N. J. Eq. (16 Stew.) 47,* and *Aller* v. *Crouter, 64 N. J.*

*Eq.* (*19 Dick.*) *381,* support the views in the English cases mentioned above.

A last will need not be expressed in any particular formula. It must be signed, but the signature may be at the beginning, middle or end or on the side. If the testator writes his name in, on or under the testament, with the intention thereby to make that name his signature, even if expressed in the third person, and the witnesses see him write it, and it is duly executed in other respects, the testament is valid.

Rejecting, as I do, the assertions that either name in the instrument in question was acknowledged by the testator to be his signature, I nevertheless find, as the facts show that the name of the testator in the attestation clause was written by him in the presence of the witnesses. As already remarked, the deceased was an intelligent man, and intended the paper writing which was offered for probate to be his last will and testament. He commenced the writing of the attestation clause immediately under the testimonium clause without leaving the usual space for signing, thereby to my mind, believing that the writing of his name in the presence of the witnesses in the clause mentioned would constitute the signing required by law. I ought to say that only two words of the testimonium clause appear on the last line of that clause, and that the attestation clause was commenced immediately below them, and while there was sufficient room for the testator to have written his name after the last word of the date in the testimonium clause, had he done so, it would have filled the line up solid, making a very awkward appearing execution of the paper. He must have intended his name as written in the attestation clause, to be his signature for the purpose of giving efficacy to his will.

These views lead to a reversal of the court below, and to the admission of the will to probate.