In re Estate of DeWitt D. Johnson.

No. 40098.

February 11, 1930.

*George C. Heilfrich* and *Mabry & Mabry,* for appellants.

*Miller & Everett,* for appellee.

Kindig, J.—On February 16, 1928, DeWitt D. Johnson, of Albia, is purported to have declared that the written instrument involved in this litigation was his last will and testament. Early in October thereafter, the testator died, and, on October 19th, about ten days later, the said written instrument was filed with the clerk of the district court for probate by Jessie H. Foster, the appellee-proponent. Objections to the probating of said written document were made by the appellants-contestants, Durl Johnson, Berniece Haymaker, Melissa Hicks, and Thomas O. Johnson. The cause was tried to the court, a jury trial having been waived, and that tribunal admitted the will to probate. Therefore, the contestants appeal. This alleged will was written by the testator himself on a ''double sheet of lined

paper," sometimes referred to by the parties as "foolscap." Instead of commencing the writing at the fold of the first sheet, the testator began at the bottom of the last sheet and continued down across the fold, on to the first sheet. In words and figures, the will is to this effect (beginning at the bottom of the last sheet) :

"Albia Iowa. Feb 11== 1928

"My Last Will & Testament of Dewitt D Johnson

"I of Sound Mind & Meory. make this my Last Will I Bequiteth [word was crossed out at this place] Bequieth & Will My. step Grand son D Brock Foster the some of Ten Thousand Dollars. When he is Twenty one years old & if I should Pass away before he is twenty one. the $10000.00 is to be put. out in Bonds. or notes. in a safe Place. & D Brock Foster. is to receive the Intrest. From my. Death in case of sicknes. or for D. Brock Foster. to secure his education. he may us a Portion of Income. & I Bequieth Berniece Haymaker My sister Four Hundred Dollars or her Hairs at her Death. & my sister Malissa Hick. the some of $400 00 or her Hairs. at her Death. & my Brother John Johnsons Hairs I Bequieth the sum of $400 00 & my Brother Durl Johnson. I Bequieth him enough money for his Berial not to exceed $300 00. & if he should be taking before I am. I Will take care of his Funeral expenses & his Portion of the Will. Will go back to the Estate & I Bequeith Jessie H Foster the Remainder of My Property after My Funeral expense & my Just Dets is Paid Her Life time. & at her Death. all of my Property Jessie H. Foster Inherited from me. shall. go to.D Brock== Foster. & My Life. insurance shall be used for my Funeral expenses. or the Portion of it that it takes. & if Jessie H. Foster or D. Brock. Foster. should be called in Death before D. Brock Foster. becomes Twenty one years old [then interlineation] or His children or Wife if D Brock. Foster has a Wife or Children shall enhearet this Property [end of interlineation]   All of My Property that they have Inhairted from Me Shall go to My Cleste [word was crossed out at this place]. Nerest Relation Brothers Sisters & Hairs

(I also appoint Jessie H. Foster.

(Executrix of my Last Will & Testament

Dewitt D. Johnson. [Crossed out at this place, by testator.] "

The following writing is on the first sheet, beginning at the fold of the paper.

"With out Bonds. or With out any Cort Proceedings. Jessie H Foster. shall have full Controle of my Property. to sell & Convay. as Long as she complies With the Provissions of this Last Will. & Testament of mine. Dewitt D. Johnson & if Jessie H Foster. should Fail to carry out the Provissions of this Will. I ask the Cort. to take Charg of the Will untill Reliesed. When D Brock. Foster. is Twenty one years old. I also Will D. Brock. Foster. my Watch & some Money that is in my Box at the Bank. & my Car.

"Continuation of Last Will & Testament of. Dewitt D. Johnson. In our presence said. Dewitt D. Johnson who at the time. was of sound mind & memory & under no restrant declared this to be his last Will & testament. & in his presence & in the presence of each other We hear by sign our names This. 16 day of. February. A D. 1928. at Albia. County of Monroe. State of Iowa

(Witness Mr. Fred. Anderson.
(Witness Mrs. Mattie Anderson"

Spelling, capitalization, and punctuation are as they appear in the original will.

It seems that the testator wrote on different dates, because he commences with February 11, 1928, and ends on the attestation clause with February 16th.

For a number of years, the testator lived at Albia, and he was well acquainted with Fred Anderson and Mattie Anderson, husband and wife, who witnessed his will. First having prepared the instrument himself, the testator then, on February 16, 1928, drove from Albia into the country about 4½ miles, to the home of these witnesses. That was about 11 o'clock A.M., but the testator visited in this home, and took a noon meal there. Following that meal, the testator informed Mr. and Mrs. Anderson that he desired them to witness his will. Then the testator removed from his pocket an envelope, and drew therefrom a paper which is now offered as the will. When so doing, the testator asked the Andersons for pen and ink, which they gave him. Upon receiving the pen and ink, the testator apparently added to the will the date for the attestation clause, which

reads: "This. 16 day of. February. A D. 1928. at Albia. County of Monroe. State of Iowa"

Immediately thereafter, the testator announced to said Andersons that the writing was his will, and that he wanted them to witness it. They complied with the testator's request, and subscribed their names to the instrument as such witnesses. Soon thereafter, the testator took the will, put it back into the envelope, and then placed the same in his pocket. At that time, there was written on the envelope the following: "Will of D. D. Johnson,"—the testator's name being DeWitt D. Johnson. As thus marked, the envelope, sealed, was found, after DeWitt D. Johnson's death, in his safety deposit box at the Peoples' National Bank, of Albia. From there, the envelope was taken to the clerk of the district court, where it was opened by him. Contained within the envelope was the will aforesaid, and an instrument headed: "A copy of my dear wife's will. Albia Iowa, October 24, 1925."

There is no controversy concerning the testator's handwriting, the sufficiency of the attestation clause, the mental capacity of the testator, or any other subject, except it is denied by the contestants that the will is signed by the testator in compliance with the requirements of the 1927 Code. So far as material, the provisions thereof are as follows:

"Section 11850. Personal property to the value of three hundred dollars may be bequeathed by a verbal will witnessed by two competent persons, but if such bequest is of greater value, it shall be valid only to that extent."

"Section 11851. A soldier in actual service, or a mariner at sea, may dispose of all his personal estate by a will so made and witnessed."

"Section 11852. All other wills, to be valid, must be in writing, signed by the testator, or by some person in his presence and by his express direction writing his name thereto, and witnessed by two competent persons."

I. Our consideration of this controversy is confined to Section 11852, supra, because the will in dispute is governed thereby. Moreover, the instrument under consideration is in writing, and was witnessed "by two competent persons." Consequently, there is, as before suggested, a single question for

determination, and that is, Was the will "signed by the testator?"

A study of the statute reveals that the legislature did not require a subscription to the will, as distinguished from a mere "signing" thereof, nor is it mandatory, under the foregoing section, that the "signing" be in any designated place. An executed and valid will results, as hereinafter appears, from a signing at the beginning, in the body, or at the end of the document, provided that the signer places his name thereon with the intention of authenticating the same as his last will and testament. No determination by this court before this time seems to have been made of the precise question here presented. Some indication appears concerning the trend of our judicial opinions in that regard, however, in early Iowa cases, and much aid and assistance also will be found in the cases of other courts. Attention will now be directed to the various authorities.

The Texas Court of Appeals, in *Lawson v. Estate of Dawson*, 21 Tex. Civ. App. 361, 362 (53 S. W. 64, 65), declared:

"The authorities make a difference between the words 'signed' and 'subscribed.' Where, under the statute, the term 'signed' is used, it is held that, where the party writes his name either in the body or at the foot or end, with the intent to execute the instrument, that it will be sufficient for that purpose. * * * The English statute of frauds (29 Car. II. Chap. 3, Sec. 19) required the realty of land to be in writing, and signed by the testator, or by some other person in his presence, and by his direction. Under this statute, the English courts held that 'the place of signature is of secondary consequence, provided that wherever the testator may have chosen to place his name he meant it to stand for his final signature, and thereby authenticate the entire instrument as propounded.' As the statute did not require the signature to be subscribed, it was held that 'a will in the testator's own handwriting commencing, "I, John Stiles, do declare this to be my last will," etc., was sufficiently "signed," within the statute, although not subscribed with his name.' "

Similarity appears between the English statute of frauds and our own. Regarding that subject, we said, in *Westheimer v. Peacock*, 2 Iowa (Clarke) 528 (local citation 531):

"The language of our statuté of frauds is somewhat different from that of the fourth section of 29 Car. II, and yet so much like it in terms that the English and American authorities upon its construction are entitled to the same consideration as upon questions at common law. That statute provides that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized. Our statute provides that, except when otherwise specially provided, *no evidence* of any such contract is competent unless it is in writing, and signed by the party to be charged, or by his lawfully authorized agent. * * * As applied to this case, then, the only difference is that the English statute provides 'that no action shall be brought,' while ours [Section 11285, 1927 Code] provides that 'no evidence of any such contract is competent;' but the effect is the same in both cases."

While discussing the Iowa statute of frauds, our court, in *Wise v. Ray,* 3 G. Greene 430, declared:

"It is assumed, and not denied, that Ray's name [the party involved in that litigation], which appears in the body of the instrument, was proved cn the trial to be in his own handwriting * * *. The fact that Ray's signature is in the body of the memorandum cannot impair his liability. It is a signing, within the statute of fráuds. If the terms of the contract are in writing, and the names of the parties appear, it is sufficient to satisfy the statute, without regarding form. The point is well settled that it is immaterial in what part of a memorandum the name of a party appears. If applicable to the substance of the written agreement, and is put there by the party, or by his authority, it is good, whether at the top, in the middle, or at the bottom of the instrument."

Throughout the various statutory changes in this state, no material difference appears between the statute of frauds now (Section 11285, 1927 Code), and the one under discussion in *Wise v. Ray,* supra. Because, therefore, the requirement for the "signing," under the statute of frauds, is similar to that

demanded for the execution of wills, what amounts to a signing under the one will be considered sufficient under the other. Authority for this pronouncement can be found in the adjudications of many courts. For instance, *Armstrong v. Walton,* 105 Miss. 337, 354 (62 So. 173, 175), holds:

"We find in 30 Am. & Eng. Encyc. of Law (2d Ed.) 582, the following: 'Under the English statute of frauds, a will was held to be sufficiently "signed" if the testator wrote his name at the beginning or in the body of the will, with intent thus to sign the instrument; and this rule has been followed in those jurisdictions wherein the statute is silent as to the place of signature, with the modification, in some instances, that the intent to sign must appear upon the face of the will.' In 40 Cyc. 1104 is the following: 'Where the statute relating to signing requires no more than the statute of frauds,—merely that the will shall be in writing, and be signed,—it is immaterial where the testator's signature was placed, if it was placed there with the intention of authenticating the instrument.' It is stated to be the general rule applicable to the signature to writings of various kinds that 'it is now almost universally held that, if the name of the party to be charged is written by himself or his representative anywhere in the body of the instrument, with intent thereby to authenticate it and render himself bound, it is a good signature.' "

Likewise, the Michigan court in *In re Thomas' Estate,* 243 Mich. 566, 567 (220 N. W. 764, 765), asserts:

"The will in question was in the handwriting of the testatrix. It was all on one sheet of paper. After her death, it was found in an envelope, upon which she had written: 'My will. Augusta M. Thomas.' Her name was not signed at the foot of the will, but at the top she began as follows: 'The will of Augusta M. Thomas, June 25, 1925,' etc. The question is whether thus writing her name at the top of the will is a sufficient signing, within the meaning of the statute. The statute does not require that a will be signed at the foot, or in any particular place. It may be signed anywhere, providing there is an intent to adopt the name so written as the signature to the will."

Also, the Supreme Court of Michigan, in *Stone v. Holden*, 221 Mich. 430, 434 (191 N. W. 238, 239), announced:

"Our statute relative to the execution of wills * * * follows the early English statute of Charles II (29 Car. II, Chap. 3, §5). Four years after the enactment of the English statute, and in 1680, it received judicial construction in *Lemayne v. Stanley*, 3 Lev. 1 (83 Eng. Reprint 545). * * * He [Stanley, the testator] did not subscribe his name to the will. The question before the court was whether this was a sufficient 'signing,' under the English statute. The will was sustained, '* * * for, being written by himself, and his name in the will, it is a sufficient signing, within the statute, which does not appoint where the will shall be signed, in the top, bottom, or margin, and therefore a signing in any part is sufficient.' It is doubtless true that some courts in this country, as well as the English courts, have chafed under the holding of this early case; but it was followed in England until Parliament changed the statute by 1 Vic. Chap. 26, §9, which required that the will 'shall be signed at the foot or end thereof.' This statute proved unsatisfactory, and was further amended by 15 and 16 Victoria, Chap. 24, §1, which makes wills valid '* * * if the signature shall be so placed at or after, or following, or under, or beside, or opposite to the end of the will that it shall be apparent on the face of the will that the testator intended to give effect by such his signature to the writing signed as his will' (followed by other provisions quite materially affecting the act passed in the first year of the reign of Victoria). The early English statute of Charles II, enacted in 1676, as a part of the statute of frauds, was followed, not only in this state, but in a large number of the states of the Union. Some of the states have changed their original statutes by amendment. We are persuaded that the tendency of the courts of those states which have left their statutes unimpaired by amendment is to follow the early English case of *Lemayne v. Stanley*, supra. That case placed a construction on the statute long before it was adopted in this country, and we took the statute impressed with that construction."

Following the precedent in the United States, the Minne-

sota court, in *In re Estate of Cravens,* 177 Minn. 437, 439 (225 N. W. 398, 399), used this language:

"It is familiar law that contracts in writing, even those required to be so under the statute of frauds, need not be subscribed in the technical sense,—that is, signed at the bottom,—unless a statute requires it. It is sufficient if there is a signature anywhere on the instrument, shown to have been put there as a signing. * * * That seems also to have been the law generally as to wills since the decision in *Lemayne v. Stanley* (1681) 3 Levinz 1, 83 Eng. Reprint 545. * * * Concededly, our present statute does not require signing at the bottom. Literally, it permits the signature of the testatrix, if proved as such, to appear anywhere on the instrument."

To the same effect see *Meads v. Earle,* 205 Mass. 553 (91 N. E. 916); *Thrift Trust Co. v. White* (Ind. App.), 167 N. E. 141; *Ex parte Cardoza,* 135 Md. 407 (109 Atl. 93); *In re Estate of DeGarmendia,* 146 Md. 47 (125 Atl. 897).

Manifestly, there is little, if any, conflict between the many cases upon this subject throughout the United States. Such discrepancy as might appear, upon first reading, between the foregoing cases and those contended for by appellants immediately disappears, after careful study. Appellants' cases are from jurisdictions where different statutory requirements necessitate a conclusion in harmony with the particular legislation. Reliance is made by appellants upon the following authorities: *In re Estate of Manchester,* 174 Cal. 417 (163 Pac. 358, L.R.A. 1917D 629); *In re Will of Booth,* 127 N. Y. 109 (27 N. E. 826); *Catlett v. Catlett,* 55 Mo. 330; *Warwick v. Warwick,* 86 Va. 596 (10 S. E. 843, 6 L.R.A. 775); *In re Estate of Tyrrell,* 17 Ariz. 418 (153 Pac. 767); *Succession of Armant,* 43 La. Ann. 310; *French v. French,* 14 W. Va. 458, 479; *In re Estate of Phelan,* 82 N. J. Eq. 316 (87 Atl. 625). Elucidation at this juncture will be found by again considering *Stone v. Holden* (221 Mich. 430, 437 [191 N. W. 238, 240, 241]), supra. By way of distinguishing some of the cases found in appellants' brief, the Michigan court suggests:

"The language used in *Re Booth,* 127 N. Y. 109 * * *, cited by contestant, and the holding of the court in that case, militate against the doctrine announced in the cases considered and

cited [consistent with *Lemayne v. Stanley,* the old English case, supra], more strongly than any case we have examined, unless it be the language and holding in *Sears v. Sears,* 77 Ohio St. 104 (82 N. E. 1067 * * *). But an examination of the statutes of these states shows a legislative policy to require more than the statute of Charles II required for the due execution of a will. The statutes of both states require that the signature shall be at the end * * *. That the New York court had gone fully as far as it felt it should in the way of strict construction is evidenced by language used by that court in *Re Field,* 204 N. Y. 448 (97 N. E. 881 * * *), where it was said: 'The evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether in the manner suggested is common. Hence, we think we have gone far enough in the direction of rigid construction, and that the doctrine of certain authorities should not be extended, lest, in the effort to prevent wrong, we do more harm than good.' The legislative policy of California is the same as that of New York and Ohio, and requires that wills other than holographic wills be subscribed at the end * * *. An examination of the Virginia cases discloses that, although that state had followed the statute of Charles II, there was a disinclination on the part of the court of appeals of that state to follow the construction placed upon it in the case of *Lemayne v. Stanley,* supra * * *. *Catlett v. Catlett,* 55 Mo. 330, tends to sustain contestant's counsel, but *Kolowski v. Fausz,* 103 Ill. App. 528, on the whole, does not.''

Even the California court explains and distinguishes the *Manchester* case, cited by appellant, in *In re Estate of Sullivan,* 94 Cal. App. 674, 676 (271 Pac. 753, 754), as follows:

''Appellants claim that in no California decision has a signature in the *exordium* clause been held sufficient, and that in many cases it has been held insufficient, such as *Estate of Manchester,* supra [174 Cal. 417 (163 Pac. 358)] * * *. In each of these cases, however, there was also evidence on the face of the will of incompleteness, indicating that the signature found at the beginning of the will could not have been intended as the token of execution, and could not be regarded as proof that the execution of the will was a complete and concluded

act. On the other hand, there are several authorities which uphold a signature at the top or beginning of a will."

Clearly, therefore, in states where the English statute of frauds has been followed, as in Iowa, it is essential only that a will be signed, as distinguished from subscribed; and such "signing" may be at the top of the instrument, within its body, or at the end thereof. Of course, an instrument may be so incomplete and unfinished that the courts will not declare it to be the last will and testament of its author. *In re Estate of DeGarmendia* (146 Md. 47 [125 Atl. 897]), supra; *In re Estate of Sullivan* (94 Cal. App. 674 [271 Pac. 753]), supra.

According to what standard the incompleteness shall be measured, or the extent of such insufficiency necessary to invalidate a given will, we do not now determine or suggest; because DeWitt D. Johnson's last will and testament now under consideration is complete enough to meet the requirement in that regard. No indication appears from the instrument that the testator intended to add anything not appearing thereon, and full disposition was made of all property named therein. Resultantly, the "signing" is adequate if the said DeWitt D. Johnson's name, appearing at any place on the document, was written there by him, "intending it to be his signature," "for the purpose of thereby authenticating the entire instrument as propounded." That Johnson's name was written by him wherever it appears on the instrument is conceded by all concerned. A dispute arises, however, regarding the intention which prompted the writer to place his signature on the alleged will.

II. The contention is made by appellants that the only reason the testator wrote his name on the purported will was to identify himself as the one who would be the testator, were the document finally "signed" and properly authenticated; while appellee, on the other hand, insists that at least upon one occasion (hereinafter discussed) Johnson, the writer, intended his signature to be a "signing" in order that the document would be authenticated as his last will and testament.

DeWitt D. Johnson's name appears four times in that part of the instrument before the attestation clause. One time, however, the name is crossed out, as shown by the instrument previously quoted. Twice the name appears in the attestation

clause. Before pursuing this thought further, it is important to note that another conflict is waged between the parties over the evidence that may be considered in determining the intention of the testator when placing his name in or to the instrument. Upon the authority of the California and other cases, appellants maintain that the instrument alone can be considered. See *In re Estate of Bernard,* 197 Cal. 36 (239 Pac. 404) ; *In re Estate of Streeton,* 183 Cal. 284 (191 Pac. 16).

Appellee, however, argues that the surrounding facts and circumstances, as well as the instrument, may be taken into account when determining the testator's intention in this respect. Many of the authorities above cited sustain this latter view. Under the conditions here presented, however, we find it unnecessary to determine that point, because the finding of the district court is amply fortified by a consideration of the will alone.

Returning now to the question whether at any place throughout the document DeWitt D. Johnson intended to sign his name for the purpose of authenticating the writing as his last will and testament under the statute, we find it is obvious and certain that he did "sign" his name for that reason immediately before the attestation clause, and just following the words "Continuation of last will and testament of." Obvious reasons appear in justification of that conclusion. In the first place, the testator apparently thought he had finished his will at the end of the first page upon which he wrote; for there he signed his name, "Dewitt D. Johnson," in a regular, significant, and conspicuous place, after the appointment of his executor. Concluding, for some reason, that he desired to say more about the conditions under which the executor should act, and feeling that he wanted to make a further bequest to D. Brock Foster, the testator scratched out the previous signature, and continued the writing of the will over onto the next page. Then, when he had finished with the will, remembering that he had marked out his previous signature, and desiring to indicate the change of the signature from the former to the final location, the testator said, "Continuation of last Will and Testament of," and there and then "signed" his name, for the purpose and with the intention of authenticating the instrument as his last will and testament. Immediately thereafter, and so close thereto

that other subject-matter could not be inserted, the testator wrote the attestation clause, thereby indicating hat he had completed the will, "signed" it, and desired to have it witnessed, as by law required.

Wherefore, the district court had substantial evidence upon which to base its findings, and its action in that regard was correct. Hence, the judgment of the trial court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.