**HAMDI HALAL MARKET LLC, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 11–11201–RBC.**

United States District Court, D. Massachusetts.

May 30, 2013.

David S. Godkin, Anne M. Longobucco, Birnbaum & Godkin, LLP, Boston, MA, for Artisent, Inc.

***MEMORANDUM AND ORDER ON DE-FENDANTS MOTION FOR SUMMARY JUDGMENT (# 16) AND MOTION FOR JUDGMENT ON THE PLEADINGS (# 21)***

COLLINGS, United States Magistrate Judge.

### I. Background and Facts

The Supplemental Nutrition Assistance Program ("SNAP") provides a system that gives participants financial assistance to buy necessary food items from authorized stores. The Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"), a program related to SNAP, provides food and nutrition education to at-risk pregnant, postpartum and breast-feeding women, as well as infants and young children from low-income families. *See* 42 U.S.C. § 1786(a). The Food and Nutrition Service ("FNS"), housed within the United States Department of Agriculture, partners with state agencies to administer both WIC and SNAP. In Massachusetts, WIC is administered by the Massachusetts Department of Public Health ("MDPH").

When a store does not comply with the regulations of either program, the FNS or an authorized state agency may disqualify the store from further SNAP or WIC par-

ticipation. *See* 7 U.S.C. § 2021(a); 7 C.F.R. § 278.6(a). A store disqualified from one program may be reciprocally disqualified from the other by the FNS without separate adjudication. *See* 7 U.S.C. § 2021(g); 42 U.S.C. § 1786(n). If disqualifying the store from either SNAP or WIC would impose a hardship on households participating in the program, the FNS may impose a civil monetary penalty ("CMP") instead of disqualification.

The instant case is currently before the Court on the defendant's motion for summary judgment (# 16) and the plaintiff's countervailing motion for judgment on the pleadings (# 21). By its complaint, plaintiff Hamdi Halal Market ("Hamdi") seeks review of an FNS administrative decision disqualifying the store from participation in SNAP for three years. The facts are undisputed [1]: the FNS disqualified Hamdi from SNAP reciprocally due to the MDPH having disqualified the store from WIC for a pattern of violations. The MDPH notified Hamdi of its disqualification from WIC in a letter dated January 18, 2011. (# 18, Ex. 2) The MDPH then informed the FNS of Hamdi's disqualification in an email sent on April 7, 2011, which included as an attachment the original disqualification letter sent to Hamdi. (# 18, Ex. 4) On April 21, 2011, the FNS notified Hamdi that the agency was considering disqualifying the store from SNAP. (# 18, Ex. 5) On or about April 28, 2011, Hamdi filed an administrative appeal of the potential disqualification by the FNS from SNAP, but did not dispute that WIC regulations had been violated. (# 18, Ex. 3) The FNS notified Hamdi on May 2, 2011, that the store had been disqualified from participation in SNAP for a three-year period, that the plaintiff was not eligible for a CMP and that Hamdi had appeal rights *vis-a-vis* the CMP decision. (# 18, Ex. 6) Hamdi appealed by letter dated May 9, 2011, arguing that SNAP disqualification would create a hardship for its business. (# 18, Ex. 7) The FNS issued a final agency decision on June 8, 2011, denying the appeal after finding that about fifty SNAP-authorized vendors operated within less than a mile of Hamdi, including one offering halal meats. (# 18, Ex. 9)

## II. Compliance with FNS regulations

### A. Availability of Judicial Review

■ While the SNAP statutory scheme allows for judicial review of FNS action responding to retailers' direct violations, it unequivocally prohibits review of reciprocal disqualifications from SNAP resulting from WIC violations. *See* 7 U.S.C. § 2021(g)(2)(C); *Guzman v. U.S. Dept. of Agriculture Food and Nutrition Service*, 931 F.Supp.2d 488, 495, 2013 WL 1104266, at *6 (S.D.N.Y., Mar. 18, 2013) ("[T]he applicable statute and regulation plainly preclude judicial review of a SNAP disqualification that is premised on an earlier WIC disqualification. *See* 7 U.S.C. § 2021(g)(2)(C) ...; 7 C.F.R. § 278.6(e)(8)(iii)(C).... Courts have interpreted the statute and regulation cited above as depriving courts of subject matter jurisdiction to review reciprocal disqualifications." (citations omitted)); *M.J. Martins Enterprises, Inc. v. U.S. Dept. of Agriculture*, 881 F.Supp.2d 229, 231 (D.Mass.2012) ("The statutory scheme provides for the federal judicial review of an

---

1. In its opposition to the defendant's motion for summary judgment, the plaintiff admits "that there is indeed no genuine dispute as to any material fact." (# 19 (emphasis in original)) Apparently reflecting this concession, Hamdi filed nothing to controvert the state-

ment of undisputed facts filed by the United States. (# 17 at 3–5) As a consequence, under Local Rule 56.1, all of the defendant's material facts "will be deemed for purposes of the motion to be admitted."

adverse action taken by the FNS for the direct violation of SNAP, *see* 7 U.S.C. § 2023(a); 7 C.F.R. § 279.1, but does not authorize the review of a reciprocal disqualification from SNAP following an adverse action taken by a state agency for the direct violation of WIC.") (citations omitted); *see also Salmo v. U.S. Dept. of Agriculture,* 226 F.Supp.2d 1234, 1237 (S.D.Cal.2002) ("Congress has unambiguously stated that decisions by the FNS disqualifying a store from participating in [SNAP] as a result of a prior WIC disqualification are not subject to administrative or judicial review."). However, the bar to judicial review of the action by the FNS in disqualifying Hamdi from SNAP does not prevent all review in this case. Here, the plaintiff contends that the FNS did not comply with its own regulations because the MDPH's agent did not sign the letter notifying the FNS of the MDPH's decision to disqualify Hamdi from WIC. FNS regulations require the WIC administering agency to provide a signed and dated disqualification letter to the FNS before the FNS can reciprocally disqualify a vendor. *See* 7 C.F.R. § 278.6(e)(8)(ii)(B). The lack of signature on the notice of disqualification would violate FNS regulations. When faced with a question of whether an agency complied with its own regulations, "[t]he reviewing court's function is only to determine the validity of the questioned administrative action.... The scope of judicial review is limited to determining whether the agency properly applied the regulations." *Guzman,* 931 F.Supp.2d at 495, 2013 WL 1104266, at *6 (internal citations and quotation marks omitted).

To be clear, there is no dispute that Hamdi received a letter with a handwritten signature dated January 18, 2011, disqualifying the business from WIC for a period of three years. (# 18, Ex. 2) The issue here relates to the alleged lack of a signed disqualification notice between the agencies, the MDPH and the FNS.

*B. The Signature Issue*

Hamdi takes issue with the e-mail attachment sent by the MDPH to the FNS on April 7, 2011. (# 18, Ex. 4) This e-mail attachment was a copy of the original letter sent by the MDPH to the plaintiff on January 18, 2011 (# 18, Ex. 2) notifying Hamdi of its disqualification from WIC albeit without the *handwritten* signature.[2] In its memoranda (# 20 at 3–4, # 21 at 2), the plaintiff focuses on the lack of a handwritten signature in this electronic document, claiming that this omission violates 7 C.F.R. § 278.6(e)(8)(ii)(B) which states that "FNS shall not disqualify a firm from the Food Stamp Program on the basis of a WIC letter unless [...] [a] signed and dated copy of such notice is provided to FNS by the WIC administering agency." Nothing in the regulations indicates that the only acceptable form of signature is a handwritten signature.[3]

The electronic document attachment sent by the MDPH to the FNS shows that Judy Hause, an agent of MDPH, typed her name at the bottom of the letter. (# 18, Ex. 4) Absent any legal analysis or citations to legal precedent, the plaintiff's bare-bones argument that a document requiring a signature actually mandates a handwritten signature is not persuasive. While the question of how one signs an

2. What likely happened here is that, rather than scanning the letter with the handwritten signature that had been sent to Hamdi, the MDPH merely forwarded a copy of the letter from a computer as an attachment to the e-mail to the FNS.

3. Within the applicable regulations, Congress did not specifically define what it means to "sign" the document in question.

electronic document may seem like a relatively recent phenomenon faced by courts, similar questions have confronted the judiciary with all communications technology advances, spanning from the telegraph to the internet. *See, e.g., Providence Granite Co., Inc. v. Joseph Rugo, Inc.,* 362 Mass. 888, 888, 291 N.E.2d 159, 160 (1972) (a typed name at the end of a telegram qualifies as a signature); *Cloud Corp. v. Hasbro, Inc.,* 314 F.3d 289, 295–96 (7th Cir. 2002) (holding a typed name at the end of an email qualifies as a signature). When responding to the question of how one might sign new kinds of documents created by these technologies, courts have drawn from common law principles—a source that provides insight as to why documents require no handwritten signature to be "signed."

■ A signature demonstrates that the signer intends to authenticate a document as her own act through the use of a mark. Common law cases have long recognized forms such as the mark of the cross and the use of a seal as acceptable forms of signature. *Clarke v. Dunnavant,* 37 Va. 13 (1839) (citing to the English Common Law case, *Harrison v. Harrison,* 8 Ves Jun 186, 32 ER 324 (1803), holding that the mark of a cross is an acceptable form of a signature); *Waller v. Waller,* 42 Va. 454 (1845) (citing to the English Common Law case, *Lemayne v. Stanley,* 29 Charles 2 (1681), holding that the use of a seal is an acceptable form of a signature— a case cited with approval by the Massachusetts courts, *Meads v. Earle,* 205 Mass. 553, 556, 91 N.E. 916, 918 (1910)). To count as a signature, the function and intent of applying a mark holds greater weight than the form a mark takes.

■ Both federal case law and statutes clearly indicate that a typed name on an electronic document suffices as a signature. "Neither the common law nor the UCC requires a *handwritten* signature. . . . It is not customary, though it is possible, to include an electronic copy of a handwritten signature in an e-mail, and therefore its absence does not create a suspicion of forgery or other fraud—and anyway an electronic copy of a signature could *be* a forgery." *Cloud Corp.,* 314 F.3d at 296 (emphasis in original; internal citations omitted); *see also On Line Power Technologies, Inc. v. Square D Co.,* 2004 WL 1171405, at *8 (S.D.N.Y. Apr. 20, 2004) (holding that "[a] name or another symbol attached to a piece of paper with intent to authenticate creates a valid signature"). Further, Congress has explicitly defined the term "electronic signature" to mean "an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." 15 U.S.C. § 7006.

■ While it might be the norm to use a scanned handwritten signature or even a "/s/" as an electronic signature, these customs are by no means the only marks acceptable to authenticate documents. The practice of leaving space for a handwritten signature above a typed name also amounts only to custom. This custom does not invalidate a typed name from counting as a signature simply because it is not accompanied by handwriting. Requiring a specific method of a mark would focus on form instead of function, logic which flies in the face of case law. The law demands only demonstration of a person's intent to authenticate a document as her own in order for the document to be signed. Many symbols may demonstrate this intent. Judy Hause's typed name at the end of the notice terminating Hamdi's WIC vendor agreement clearly demonstrates her intent to authenticate the document and it therefore serves as a signature. (# 18, Ex. 4)

Thus, the WIC termination letter sent from the MDPH to the FNS meets the requirements of 7 C.F.R. § 278.6(e)(8)(ii)(B) that a signed and dated notice of WIC disqualification be provided by the state agency to the FNS.

### C. Harmless Error?

While Hamdi correctly states that regulations require the MDPH to provide a signed and dated copy of a WIC disqualification notice to the FNS (# 20 at 3–4, # 21 at 2), the plaintiff incorrectly argues that all legal errors carry equal legal significance. (# 20 at 4) Characterizing the legal system's handling of missteps as a choice between black and white ignores the analytical spectrum actually utilized by courts. Even if the facts were such that Judy Hause did not sign the letter sent by the MDPH to the FNS, Hamdi's SNAP disqualification would not be overturned since its omission would amount only to harmless error.

 The harmless error doctrine applies during judicial review of administrative action. *Save Our Heritage, Inc. v. F.A.A.,* 269 F.3d 49, 61 (1st Cir.2001). Congress had this higher legal sophistication in mind when crafting the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, which compels a court reviewing administrative action to "take due account of 'the rule of prejudicial error.'" *Save Our Heritage,* 269 F.3d at 61. Under this doctrine the court reviews to determine if an "error caused actual prejudice." *Save Our Heritage,* 269 F.3d at 61. "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *U.S. v. Coalition for Buzzards Bay,* 644 F.3d 26, 37 (1st Cir.2011) (quoting *Shinseki v. Sanders,* 556 U.S. 396, 409, 129 S.Ct. 1696, 173

L.Ed.2d 532 (2009)). "Agency missteps too may be disregarded where it is clear that a remand 'would accomplish nothing beyond further expense and delay.'" *Save Our Heritage, Inc.,* 269 F.3d at 61–62 (citing *Kerner v. Celebrezze,* 340 F.2d 736, 740 (2d Cir.1965)); *see also Sierra Club v. Slater,* 120 F.3d 623, 637 (6th Cir.1997) ("[...] a mistake that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's determination. We find the plaintiffs' argument to be, at best, nitpicking." (internal citation omitted)).

 In this case there is no dispute that the plaintiff was appropriately notified of its disqualification from WIC. It is also undisputed that notice of the WIC disqualification was sent by the MDPH to the FNS, and that, apart from the signature issue, the content of that notice was correct in all respects. It is further not disputed that, substantively, the reciprocal disqualification of Hamdi from SNAP was proper, leaving aside any question with respect to an alternative civil monetary penalty. Even if the omission of a handwritten signature on the e-mail letter attachment sent from the MDPH to the FNS did not meet SNAP requirements, it was at most a minor oversight amounting to harmless error. Hamdi has established no actual prejudice occasioned by the agency's use of a typed name. To reverse the SNAP disqualification order would be to exalt form over function resulting in further delay and expense merely to avoid the inevitable.

### III. Civil Monetary Penalty

The plaintiff's complaint challenges the decision by the FNS of SNAP disqualification rather than the imposition of a civil monetary penalty ("CMP") against Ham-

di.[4] The SNAP statute barring judicial review of reciprocal disqualifications does not specifically except this decision from judicial review. *See* 7 U.S.C. § 2021(g). Courts have varied in how they have approached the issue. *Compare Dasmesh Enterprises, Inc. v. United States*, 501 F.Supp.2d 1033, 1039 (W.D.Mich., 2007) (considering plaintiff's appeal of a CMP denial), with *Islam Corp. v. Johanns*, 2007 WL 1520930, at \*\*1–2 (W.D.Ky. May 21, 2007) (holding that § 2021(g)(2)(C) bars judicial review of CMP decisions resulting from reciprocal disqualification); *see also Guzman*, 931 F.Supp.2d at 495, 2013 WL 1104266, at \*6 ("Unlike decisions to disqualify a store from SNAP after it has been disqualified from WIC, the decision not to impose a civil money penalty is not expressly exempted from judicial review." (internal citations and quotation marks omitted)); *M.J. Martins Enterprises, Inc.*, 881 F.Supp.2d at 231–32 (entertaining the possibility of hearing a challenge to a CMP decision, but not deciding on the issue since the plaintiff never included the challenge in its complaint).

■■■ Even if this Court determined it had the power to review the decision by FNS not to grant a CMP, the plaintiff has no factual basis upon which to mount a challenge. The FNS may only impose a CMP if disqualifying a store imposes a "hardship to food stamp households because there is *no* other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." 7 C.F.R. 278.6(f)(1). In this case, when assessing the plaintiff's eligibility for a CMP, the FNS noted that approximately fifty comparable stores participated in SNAP within a mile of Hamdi. (# 18, Ex. 8) Even if Hamdi asked the FNS to factor

in the store's speciality as a halal market, one need travel only a half mile down the road to find Indian Ocean Grocery & Halal Meat—also a SNAP participant. (# 18, Ex. 8) The regulation states there must be "*no* other authorized retail food store in the area selling a large variety of staple food items at comparable prices." 7 C.F.R. 278.6(f)(1) (emphasis added). The undisputed record here shows that there were many such SNAP vendors in close proximity to Hamdi. Under the regulations, the plaintiff does not qualify for a CMP. The FNS had no option to impose a CMP rather than disqualify Hamdi from SNAP participation.

## IV. Order

For all the reasons stated, it is ORDERED that Defendant's Motion for Summary Judgment (# 16) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that the Motion for Judgment on the Pleadings (# 21) be, and the same hereby is, DENIED. Judgment shall enter for the defendant accordingly.

---

4. Although Hamdi seems to have taken the position that, due to the alleged violation of the regulations "a CMP becomes irrelevant in this case" (# 20 at 3), for completeness, the CMP issue shall be addressed.