Jones, &c. vs. Jones, &c.

CASE 15————————DECEMBER 22.

# Jones, &c. vs. Jones, &c.

APPEAL FROM MASON CIRCUIT COURT.

It is only necessary for parties who desire to take an appeal to the circuit court, from an order of the county court ordering an instrument to record as a last will and testament, to file a transcript of the proceedings in the county court with the clerk of the circuit court, with the names of the appellants and appellees, and to have process issued and served on the appellees. That they file a petition, in which the intention to take an appeal is set forth, does not change the character of the proceeding, or affect the rights of either of the parties.

An instrument, executed since the 1st of July, 1852, when the Revised Statutes took effect, cannot have any efficacy as a will, unless the testator subscribed his name at the close of the writing. A will made before that period depends upon the pre-existing law for its validity.

The presumption is always against a paper which bears self-evident marks of its being unfinished, and it behooves those who assert its testamentary character to show, by the most unequivocal testimony, that the deceased subsequently adopted it as his will, in its unfinished state.

A paper offered as the will of one who died in 1854 was wholly in his handwriting, with his name written in the beginning of it, but the instrument was not dated, and contains intrinsic evidence of its unfinished state, and the name of the deceased was not subscribed at the close of the writing. Held—that it is incumbent on the propounders of the instrument to prove not only that it was written before the Revised Statutes took effect, but also that the deceased, previous to that time, intended the paper in its actual condition to operate as his will—the inference from its unfinished condition being that the deceased intended to complete it at some subsequent time, and that he did not, when it was written, intend that it should operate as his will until it was completed.

See opinion for the evidence, which, in the case, supra, is held insufficient to establish the paper as a will.

T. A. MARSHALL and J. G. HICKMAN, for appellants, cited Rev. Statutes, chapter 106, section 28, page 698; Ib., sec. 38; Ib., sec. 36; Ib., sec. 5, page 694; Ib., sec. 26, page 192; Ib., sec. 26, page 697; 13 B. Mon., 268-9; Miles' will, 4 Dana; Brown's will, 1 B. Mon., 56; 1 Jarman on Wills, (Perkins' notes,) top pages 136, 137, and side pages 96, 97.

WADSWORTH, for Mrs. Jones, appellee, cited 18 B. Mon., 260; 4 Dana, 1; 1 B. Mon., 56; 2 Stanton's Revised Statutes, page 464, sec. 36.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

This case was prematurely heard and decided at the last summer term of this court—in June, 1860. Subsequently, at the same term, on motion of appellees, the order of hearing and judgment were set aside, and the cause set down for argument at the present term. It has been again considered, and we deem it sufficient to say that, for the reasons presented in the opinion of the late Chief Justice of this court, delivered upon the former hearing, we still adhere to the judgment then pronounced, and approve of and adopt the said opinion which is as follows :—

An instrument which reads as follows, upon proof having been made, that it was altogether in the handwriting of William Jones, deceased, was, by the county court of Mason, ordered to be recorded as his last will and testament, viz :

"I, William Jones, of the county of Mason, and State of Kentucky, being of sound mind and memory, and considering the uncertainty of life, do therefore make, ordain, publish, and declare this to be my last will and testament; that is to say— first, after all my lawful debts are paid and discharged, the residue of my entire estate, real' and personal, I ordain, give, and bequeath to my beloved wife, to have during her natural life, after her death to be disposed of as follows, viz :"

Nothing more was added to the writing, nor was it at the end or close thereof subscribed by the testator.

The contestants of the will, who are the appellants in this court, filed a petition in the circuit court, setting forth the proceedings in the county court, and the names of the heirs at law of the decedent, and stated therein that they sought by appeal to the circuit court to reverse the decision of the county court. They prayed that the defendants might be summoned, and that there might be a trial of the question whether the paper admitted to record by the county court was or not the last will and testament of William Jones, deceased.

The decision of the county court was affirmed by the circuit court, and this appeal is prosecuted from that judgment.

It is insisted by the counsel for the appellees that there was no appeal from the county court to the circuit court, but that

the contestants of the will brought an action in equity to try the validity of the will, and the judgment of the circuit court ought, therefore, to be affirmed.

It was only necessary for the parties who desired to take an appeal to the circuit court to have filed a transcript of the proceedings in the county court, with the clerk of the circuit court, with the names of the appellants and appellees, and to have had process issued and served on the appellees. A petition was unnecessary, but as the object the parties had in view was to appeal from the decision of the county court, and that intention was explicitly set forth in the petition, the mode of taking the appeal which was adopted did not change the character of the proceeding, or affect the rights of either of the parties. The petition was not filed as a petition in equity but solely for the purpose of procuring an appeal, and the litigation in the circuit court was, in reality, on an appeal from the sentence of the county court.

William Jones, the testator, died in 1854. By the Revised Statutes it is provided that "when the law requires any writing to be signed by a party thereto, it shall not be deemed to be signed, unless the signature be subscribed at the end or close of such writing." (*Chap.* 21, *sec.* 26.)

As "no part of the revision is retrospective, unless expressly so declared," a will made before the 1st July, 1852, at which time the Revised Statutes took effect, depends upon the pre-existing law for its validity, and is not affected by the foregoing provision.

Under the previous law it was not indispensably necessary that the name of the testator should be subscribed at the close of his will, but the writing of his name in the body of the will or elsewhere on the same paper, with the design of giving it authenticity, was deemed a sufficient signing, if it appeared that when the will was published there was no intention to subscribe his name at the bottom of the paper. (*Miles' will*, 4 *Dana*, 1.)

The paper offered as a will in this case is not dated, and remains in an unfinished state. It was, therefore, incumbent on the propounders thereof to prove not only that the paper was

written before the Revised Statutes took effect, but also that the deceased, previous to that time, intended the paper, in its actual condition, to operate as his will.

The paper, in its actual state, contains only a partial disclosure of the testamentary disposition which the deceased intended to make of his estate. The natural inference from its unfinished condition is, that the deceased intended to complete it at some subsequent time, and that he did not, when it was written, intend that it should operate as his will until it was completed.

The presumption is always against a paper which bears self-evident marks of its being unfinished, and it behooves those who assert its testamentary character to show, by the most unequivocal testimony, that the deceased subsequently adopted it as his will, in its unfinished state. (1 *Jarman on Wills*, side page 97.)

Now, in this case, it is not even certain that the paper was written before the 1st July, 1852. According to the testimony it is in the hand-writing of the deceased, who died in 1854. The only evidence tending to prove when it was written, consists of the statement of a witness that the deceased applied to him in 1851 for the loan of a book containing the forms of a will, saying, at the same time, that he wanted the book for the purpose of writing a will, or his will; and that of another witness, who testified that he examined the paper after the decedent's death, and it had the appearance of having been written and preserved some years.

Were it however conceded, that this testimony would warrant the conclusion that the paper was written in the year 1851, there is no testimony that the decedent ever adopted it as his will before the fall of the year 1852, if indeed he ever adopted it as such at any time. One witness testifies that she then heard him say "that he had fixed his business so that nobody could disturb his wife after his death;" from which she inferred that he had made his will, although he did not say so. Another testifies, that she heard him say, in 1854, before his death, that "he had made his will, and had given every thing to his wife, after his death."

Whether the deceased, in these conversations, referred to this paper or some other, does not appear. This paper was never seen by any witness until after the decedent's death. Its contents do not correspond with the provisions of the will, by which, according to the testimony of the last witness, the testator had given every thing to his wife ; not a gift for life merely, but a gift absolutely and without qualification.

If, however, this was the paper which the decedent referred to in these conversations, still the testimony does not even tend to prove that he adopted the paper in its unfinished condition, or intended it to operate as his will at any time prior to the 1st of July, 1852. He could not afterwards adopt it as his will, and give it efficacy as such, unless he subscribed his name at the close of the writing.

It follows, therefore, that the paper was improperly admitted to record as the last will of William Jones, deceased.

Wherefore, the judgment is reversed, and cause remanded with directions to the circuit court to render a judgment reversing the sentence of the county court, and requiring that court to enter an order rejecting the paper as the last will and testament of William Jones, deceased.