THRIFT TRUST COMPANY, ADMINISTRATOR, *v.* WHITE ET AL.

[No. 13,785. Filed June 25, 1929. Rehearing denied October 22, 1929.]

*H. J. Schenck, Gavin & Gavin, Harry B. Tuthill* and *Walter C. Williams,* for appellant.

*William Daly, Edmund J. Freund, John P. Crumpacker, Bruce B. Loring* and *J. A. Fleishbein,* for appellees.

REMY, J.—Belle Stockman, in her own handwriting, prepared a paper which purported to be her last will. Six weeks later, on the morning of the day of her death, and while lying on a couch in her own home, she, in the presence of her neighbor and friend, Lillie Duncan,

requested her nurse to deliver to her the paper she had previously prepared. The request having been complied with, she said to the nurse and Mrs. Duncan that the paper was her will, in her own handwriting, and that she wanted the two to sign it as witnesses. They did as requested, signing in the presence of Mrs. Stockman, and in the presence of each other, their signatures being placed at the close. Mrs. Stockman did not subscribe her name. In fact, her name is not attached to, nor does it appear in the instrument except as it is found in the superscription thereof, which is as follows: "The will of Belle Stockman."

By agreement of the parties at the oral argument, the original will, which by its terms disposed of both real and personal property, was exhibited to this court.

Following the death of Belle Stockman, appellees, claiming that the instrument written and witnessed as aforesaid, was not signed as required by statute, and therefore not a duly executed will, began this suit to resist its probate.

Trial resulted in a finding and judgment for appellees.

It is provided by statute that "No will, except a nuncupative will, shall affect any estate unless it be in writing, signed by the testator, or by some one in his presence with his consent, and attested and subscribed in his presence by two or more competent witnesses." 2 R. S. 1852 p. 308, §3452 Burns 1926.

It is contended by appellees, and the trial court found, that the writing prepared by Belle Stockman as her will was not "signed" by her, within the meaning of the statute, and was not, therefore, duly executed. On the other hand, it is claimed by appellants that, since the name appears in the heading or superscription, and in her own handwriting, the name thus written was intended by the writer as her signature, and should be treated as such.

At common law, the signature of a testator to his will was not essential; but after the enactment of the English statute of frauds and perjuries (29, Car. II, Ch. 3), providing that a devise of lands had to be signed by the party so devising the same or by some other person in his presence, and by his express direction, the signature of the testator became necessary. Although necessary, it was held by the court of common pleas in an early case (*Lemayne* v. *Stanley* [1681] 3 Lev. 1, 83 Eng. Reprint 545) that the place of the signature in the will was immaterial. In that case, the testator wrote his own will, the first sentence of which was: "In the name of God, amen, I John Stanley make this my last will and testament." The court held that the name of the testator so written by himself at the beginning of the will, and not appearing elsewhere in the instrument, was a sufficient signing. The statute of this state governing the execution of wills (§3452 Burns 1926, *supra*), like the English statute of frauds which was in force when the Lemayne case was decided, does not specify the position on the will of the testator's signature. The courts of those states of the Union which have statutes similar to that of Indiana, have, when the question has arisen, quite generally followed the Lemayne case. The question being one of first impression in this state, we shall review briefly a few of the cases in other jurisdictions where, in each instance, the statute governing the execution of wills is substantially the same as the Indiana statute quoted above.

The exact question presented by this appeal was recently decided by the Michigan Supreme Court. *In re Thomas Estate* (1928), 243 Mich. 566, 220 N. W. 764. In that case, as in the case at bar, the will was written by the testator, the superscription or heading being, "The will of Augusta M. Thomas," the name of the testator not appearing elsewhere upon the will. In

deciding the case, holding the will to be duly executed, the court, in the course of its opinion, said: "The question is whether thus writing her name at the top of the will is a sufficient signing, within the meaning of the statute. The statute does not require that a will be signed at the foot or in any particular place. It may be signed anywhere providing there is an intent to adopt the name so written as the signature."

In the case of *Stone* v. *Holden* (1922), 221 Mich. 430, 191 N. W. 238, 29 A. L. R. 884, the facts were as follows: Jackson T. Norris, after filling out a blank form of will, and after declaring the same to be his last will and testament, but without subscribing his name thereto, requested two women to sign their names below the attesting clause as witnesses, which they did. The first sentence of the instrument so prepared was: "I, Jackson T. Norris, of the city of Lansing in the county of Ingham, State of Mich., being of sound mind and memory, do make, publish and declare this to be my last will and testament." The attesting clause certified that Norris had signed the instrument, declaring it to be his will. The court held that the will was duly executed, citing the Lemayne and other cases.

In all respects similar to the Norris case is *Meads* v. *Earle* (1910), 205 Mass. 553, 91 N. E. 916, 29 L. R. A. (N. S.) 63. The testator, in filling out a blank form, had written her name in the initial and attesting clauses, but had not subscribed her name on the line provided in the blank for her signature. The court held that there was a sufficient signing.

The Supreme Court of Alabama had the question under consideration in the case of *Armstrong* v. *Armstrong* (1857), 29 Ala. 538, in which the will was written by another at the direction of the testator, but was not signed at the close, although the execution was attested by witnesses. The court, in holding that the signing

was sufficient, pointed out that the statute of Alabama was substantially the same as the provision relating to wills in the English statute of frauds (29 Car. 11, ch. 3), and concluded by saying that "therefore, the construction which had been put upon that part of the British statute, and settled as its true construction, by the British decisions before adoption of our statute, ought to be regarded as the construction which our legislature intended to be put upon that part of our statute now under consideration."

To the same effect as the cases reviewed, see *Kolowski* v. *Fausz* (1902), 103 Ill. App. 528; *Ex parte Cardozo* (1919), 135 Md. 407, 109 Atl. 93; *Armstrong* v. *Walton* (1913), 105 Miss. 337, 62 So. 173, 46 L. R. A. (N. S.) 552, Ann. Cas. 1916E 137; *Lawson* v. *Dawson* (1899), 21 Texas Civ. App. 361, 53 S. W. 64; *Adams* v. *Field* (1849), 21 Vt. 256; *In re Walsh* (1893), 3 Newfoundland 738.

In 40 Cyc. 1104, it is said: "Where the statute relating to signing requires no more than the statute of frauds—merely that the will shall be in writing and be signed, it is immaterial where the testator's signature was placed, if it was placed there with the intention of authenticating the instrument."

In the instant case, the competency of Belle Stockman to make a will is not questioned, and the facts surrounding the execution are not in controversy; she informed the two women about seven hours before her death that the instrument which began, "the will of Belle Stockman," was her will written by herself, and asked that they sign as witnesses, which they did. The fact that Mrs. Stockman published the instrument as her will, and requested her nurse and neighbor to sign as witnesses, is evidence that she considered the will to be complete, and is evidence that it was her intention to adopt her name as written in the beginning of the will as her signature. If the initial words "The will of Belle

Stockman," had, instead, been written at the close, who would say that it should not be treated as her signature? Good faith wills are solemn instruments, not to be set aside by the courts because of mere irregularities as to form; they should be upheld when it is possible within the law to do so.

We conclude that, under the statute in force in this state (2 R. S. 1852 p. 308, §3452 Burns 1926, *supra*) and, under the facts as shown by the record, the will was duly executed.

Reversed.

Lockyear, J., dissents.

## ON PETITION FOR REHEARING.

REMY, J.—In their petition for rehearing, appellees call attention to the case of *Reed* v. *Watson* (1867), 27 Ind. 443, and ask that it be considered. That case is not in conflict with the conclusion of this court in the principal opinion. The issues involved in that case, and upon which the decision turned, did not include the issue here involved. Nevertheless, the writer of that opinion, after recounting the facts connected with the signing of the will there under discussion, and after discussing the statute governing the execution of wills which this court has set out in its principal opinion, uses this language: "Without pursuing the subject further here, it is sufficient, for the purpose of this decision, to say, that under the most liberal rulings on the subject to which our attention has been called, it is required that it should clearly appear, from the evidence, that the testator intended to, and did, adopt the name thus written in the body of the instrument as his final signature, and he must, in effect, have declared that fact to the witnesses. . . . But . . . there is no evidence showing an intention, on the part of Reed, to

adopt the name at the commencement of the instrument as his final signature, but just the contrary."

The Supreme Court of this state has correctly held that the place of the testator's signature on the will is immaterial. *Hallowell* v. *Hallowell* (1882), 88 Ind. 251. See, also, *Peace* v. *Edwards* (1915), 170 N. C. 64, 86 S. E. 807, Ann. Cas. 1918A 778.

The case of *Bamberger* v. *Barbour* (1929), 335 Ill. 458, 167 N. E. 122, cited by appellees in their petition for rehearing, is distinguishable from the case at bar. The witnesses to the purported will of Bamberger testified on the trial that, prior to the execution of the instrument, Bamberger was at a hospital preparing to undergo a surgical operation, and that they had called to pay him a visit; that he told them that he was about to write his will, and that he wanted them to sign it; that the will was written in their presence, and, when so written, they signed their names thereto. The first line of the purported will in that case is as follows: "I—Edwin Durand Bamberger bequeath all of my property," etc. The instrument was not formally signed.

The question in the case was whether Bamberger intended that his name, written by himself, should be regarded as his signature to the instrument. It may be said at the outset that the statute of Illinois governing the execution of wills is materially different from that of this state. The court, in the beginning of its discussion of the question, referring to cases in other jurisdictions in which the same question was involved, said: "Some of them [authorities] hold that this intention may be ascertained from the declaration of the testator and the surrounding circumstances," citing some of the cases cited by this court in the principal opinion. The Illinois court then states that, in that case, the rule can have no application, and, in its argument, used this language: "The evidence discloses no statement of the deceased

that the name as written by him was intended as his signature and no declaration of the deceased after the instrument was written that it was his will. The instrument contains no such declaration. That the deceased intended the name to be his signature and that he intended the instrument to be his completed will is not established by the evidence." And again, near the close of its opinion, after citing cases discussed by this court in its principal opinion, the court used this language: "It is impossible to satisfactorily distinguish these cases from those which announce the contrary rule, but the instrument under consideration in each of them, as well as in *Lemayne* v. *Stanley, supra*, contained the express declaration that it was the last will and testament of the testator, which is not the case here." In the case at bar, Belle Stockman declared that the instrument written by her was her will, which express declaration is also in the instrument itself. Some parts of the Bamberger opinion are, as we interpret it, mere *dicta*, and in conflict with the decisions of most of the courts of those states which have adopted the ancient statute of frauds as to the execution of wills.

Rehearing denied.