*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | Supreme Court No. S-15971 |
| ALVA MARIE BAKER. | ) | |
| | ) | Superior Court No. 3AN-14-00397 PR |
| | ) | |
| | ) | O P I N I O N |
| | ) | |
| _____ ) | ) | No. 7143 – December 30, 2016 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances:  Stuart C. Rader, Ingaldson Fitzgerald, P.C., Anchorage, for Appellants.  David D. Clark, Law Office of David Clark, Anchorage, for Appellee.

Before:  Stowers, Chief Justice, Winfree, and Bolger, Justices.  [Fabe and Maassen, Justices, not participating.]

STOWERS, Chief Justice.

## I.      INTRODUCTION

Alaska Statute 13.12.502(b) provides that a testamentary instrument will be "valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting."  Before us is a purported holographic will, written totally in the decedent's handwriting, with instructions to distribute the decedent's estate at death.  The sole question on appeal is whether the decedent's handwritten name at the beginning of the document is a "signature" as contemplated by AS 13.12.502(b).  This is an issue of first impression in our state, and

we agree with the superior court's conclusion that a testator's handwritten name in the exordium clause[1] of a purported holographic will is sufficient to satisfy the signature requirement in AS 13.12.502(b) unless the instrument is otherwise incomplete.

## II.    FACTS AND PROCEEDINGS

In January 2010 Alva Marie Baker handwrote a purported will.  The instrument, as closely as possible, is reproduced below [sic throughout]:

Jan 10 / 2010

Jan 10 / 2010

My name is Alva Marie Baker –

My "will" when I pass on is to go as follows!

(1) My home goes to my daughter Connie Marie Sumrall

(2) Any vehicles or vehicle! I own upon death goes to Connie Sumrall

(3) All "tools" and "furniture" of any kind goes to Connie Sumrall

(4) All funds held in a checking account goes to Connie Sumrall

at Northrim Bank[2]

(5) All funds in saving accounts goes to Connie Sumrall

(6) Any Insurance I may have goes to Connie Sumrall

(7) Any Jewerly I may have upon death goes to my daughter Connie Sumrall

---

[1]    An exordium is "[a]n introduction in a discourse or writing, esp[ecially] in a will.  In a will, the exordium usu[ally] contains statements of the testator's name and capacity to make the will." *Exordium*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[2]    The superior court found that the will referred to a "Northern Bank" account, but the record shows that Baker held an account at Northrim Bank.

(8) All pictures I have upon my death given to me by "Connie <u>or</u> my grandchildren gave me, can go back to the "<u>giver</u> ! ! "I can not take them with me ! !

(9) All "old" furniture can go to Connie, if she wants them if not, let the grand children "<u>pick</u>" some – <u>please</u> do not fight over anything !

(10) <u>Money</u> I <u>have</u> <u>at</u> "Key Bank Eagle River, AK)

Equal divided

Will be <u>divided</u> to (<u>Equal</u>) my 7 <u>grand</u> <u>kids</u> –

The grand kids that have passed away, if they have a child it will go to (there child or <u>divided</u> <u>between</u> their kids)

Baker died in November 2013. In February 2014 Baker's daughter, Connie Marie Sumrall, filed a petition for adjudication of testacy and formal probate of the instrument. That petition was opposed by Seth Whaley and Jessica Milwicz, two of Baker's grandchildren.

Sumrall moved for partial summary judgment, arguing that the document was a valid holographic will per AS 13.12.502(b) because it was written in Baker's hand and signed by Baker. Whaley and Milwicz opposed that motion arguing that there were genuine issues of material fact as to, among other things, whether the handwriting on the will was Baker's, whether there was testamentary intent, and whether there were issues of incapacity or undue influence. The superior court denied Sumrall's motion for partial summary judgment, ruling that an evidentiary hearing would be necessary "to determine . . . whether the identification of Ms. Baker constitutes a signature as contemplated by [the holographic will statute]."

Prior to the hearing, Whaley and Milwicz stipulated that the handwriting on the contested will was entirely Baker's. And all parties stipulated that whether Baker's handwritten name in the first sentence of the contested will "complie[d] with the signature requirement of AS 13.12.502" was "an issue of law for determination by the

court," and that Sumrall "[was] not precluded from offering extrinsic evidence in support of her opposition to [Whaley and Milwicz's] motion for summary judgment." The superior court issued orders accepting both stipulations.

Whaley and Milwicz then filed a motion for partial summary judgment seeking a determination that Baker's handwritten name at the top of the document was not a signature as contemplated by AS 13.12.502(b), and that Baker therefore died intestate. Sumrall opposed that motion and filed a cross-motion for partial summary judgment arguing that Baker's handwritten name was a signature as contemplated by AS 13.12.502(b) and that the document was a valid holographic will.

In March 2015 the superior court denied Whaley and Milwicz's motion for partial summary judgment. The order related exclusively to the question "whether the purported execution of the will — a signature contained in the introductory clause — can satisfy [AS] 13.12.502(b), governing holographic wills." Alaska Statute 13.12.502(b) provides that a testamentary instrument may be "valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting." The court concluded that, although there "is limited Alaska precedent" interpreting that statute, Alaska law does not require a terminal signature in order for a holographic will to be valid.

The court reasoned that "Alaska follows a holographic will statute nearly identical to that in California,"[3] and California courts have determined that when faced with a purported will in which the signature does not appear at the end, "the court must determine from an inspection of the instrument's language, form[,] and the relative position of its parts whether or not there is a positive and satisfactory inference that the decedent's name was placed in that location with the intention of executing the

---

[3]     CAL. PROB. CODE § 6111 (West 2016).

instrument."[4] Applying the California rule to this case, the superior court determined that there was a "satisfactory inference" that Baker placed her name in the introductory clause "with the intention of executing the instrument" and that the instrument therefore "as a matter of law . . . meets the requirements of AS § 13.12.502(b)."

Whaley and Milwicz filed a motion for reconsideration and the superior court denied the motion. Whaley and Milwicz then notified the court that they wished to dismiss their "claims concerning decedent's competence, undue influence[,] and insane delusion"; the court issued an order dismissing those claims with prejudice. Whaley and Milwicz sought our review of the superior court's ruling that the document was a valid holographic will. We denied their petition for review without prejudice because it was not a direct appeal from the superior court's entry of a formal testacy order.[5]

The parties then stipulated that there were no more disputed issues. The superior court entered the stipulation "[b]ased on contestants' notice of dismissal with prejudice as to their other objections and their request that the evidentiary [hearing] to address other objections be vacated." The will subsequently entered formal probate, and Sumrall was appointed personal representative of the estate.

Whaley and Milwicz now appeal the entry of the final testacy order.

## III.    STANDARD OF REVIEW

The interpretation of a statute is a legal question which we review de novo.[6] "We interpret . . . Alaska law according to reason, practicality, and common sense, taking

---

[4]    *In re Bloch's Estate*, 248 P.2d 21, 22 (Cal. 1952).

[5]    *Milwicz v. Sumrall*, No. S-15872 (Alaska Supreme Court Order, Apr. 20, 2015).

[6]    *Jimerson v. Tetlin Native Corp.*, 144 P.3d 470, 472 (Alaska 2006) (citing *Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1012 n.6 (Alaska 2003)).

into account the plain meaning and purpose of the law as well as the intent of the drafters."[7] In interpreting statutes, we take "a 'sliding scale' approach . . . : 'the plainer the language of the statute, the more convincing any contrary legislative history must be.' "[8]

## IV. DISCUSSION

Alaska Statute 13.12.502(b) recognizes the validity of holographic wills provided that "the signature and material portions of the document are in the testator's handwriting."[9] The question presented by this case is whether a testator's handwritten name in the exordium clause at the top of a handwritten will is sufficient to satisfy the statute's signature requirement. Because we agree with the superior court that there is a "satisfactory inference that the decedent's name was placed [in the introductory clause] with the intention of executing the instrument,"[10] we hold that the instrument meets the requirements of AS 13.12.502(b) and is valid for probate.

### A. AS 13.12.502(b) Does Not Require A Terminal Signature.

Every American holographic will statute requires the testator to sign the will.[11] Some holographic will statutes specifically require the testator's signature to

---

[7]    *Estrada v. State*, 362 P.3d 1021, 1023 (Alaska 2015) (alteration in original) (quoting *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[8]    *Id.* (quoting *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991)).

[9]    AS 13.12.502(b).

[10]    *In re Bloch's Estate*, 248 P.2d 21, 22 (Cal. 1952).

[11]    RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 3.2 (AM. LAW INST. 1999).

appear at the end of the document.[12]  The  parties agree that the text of AS 13.12.502(b) does not require a terminal signature.  But in states with statutes that, like AS 13.12.502(b), do not specify the location of the signature, courts nearly unanimously have declined to read the signature requirement as implicitly requiring a terminal signature.[13]  Yet a handful of other jurisdictions — namely, Mississippi, Louisiana, and Puerto Rico — have determined that even when the holographic will statute is silent as to the location of the signature, a signature will be valid only if located at the end of the document.[14]

In *Baker v. Baker's Estate* the Mississippi Supreme Court determined that a handwritten caption reading "Metta G. Baker writing this" was insufficient to satisfy the statutory requirement that a holographic will be "wholly written and *subscribed* by" the testator.[15]  It reached its conclusion in part through reference to the Black's Law

---

[12]  *Id.*

[13]  *See, e.g.*, *In re Estate of Phippen*, 47 Cal. Rptr. 648, 652 (Cal. App. 1965); *In re Potts' Estate*, 61 A.2d 649, 650 (Union County Ct., N.J. 1948); *In re Goodman's Will*, 50 S.E.2d 34, 36 (N.C. 1948); *see also* M.L. Schellinger, Annotation, *Place of Signature of Holographic Wills*, 19 A.L.R.2d 926 (1951) ("In the absence of a requirement that the testator sign at the end of a holographic instrument, his name may appear at any place in the instrument, if it was written with an intent to execute the testament.").

[14]  *See In re Armant's Will*, 9 So. 50, 51-52 (La. 1891); *In re Estate of Giles*, 228 So. 2d 594, 596 (Miss. 1969); *Castañer v. Superior Court*, 81 P.R. 841, 843-45 (P.R. 1960); *see also* Kevin R. Natale, Note, *A Survey, Analysis, and Evaluation of Holographic Will Statutes*, 17 HOFSTRA L. REV. 159, 167-68 (1988) (indicating that Mississippi's and Puerto Rico's holographic will statutes do not expressly provide that the testator's signature appear at the end of the will but "have been judicially construed to require a signing at the end of the instrument").

[15]  24 So. 2d 841, 841-43 (Miss. 1946) (emphasis in original); *see also Giles*,
(continued...)

Dictionary definition of "subscribe": "to write under; to write the name under; to write the name at the bottom or end of a writing."[16] The court reasoned that the subscription requirement implies a terminal location — as opposed to a signature requirement, which would imply no such locational constraints.[17]

Other jurisdictions, though, have determined that "where the statute requires only that the instrument be 'signed,' such provision contemplates that the instrument must be signed at the end."[18] For instance, the Supreme Court of Louisiana followed the doctrine in French law that a signature must appear at the end of an instrument in *In re Armant's Will*.[19] The Supreme Court of Puerto Rico also concluded that "the introductory words: 'I, Adele Bandler Castañer . . .' " did not constitute a signature.[20] The court reasoned, based on Spanish law, that "[e]very holographic will needs to be 'signed by the testator' and the signature can be no other than that which

---

[15](...continued)
228 So. 2d at 596 (describing a prior case that "held: (1) the testator's signature must be at the end of the holographic instrument, testamentary in character, which shows on its face that the testamentary purpose therein expressed is completed; (2) the court will not consider writing below the signature on a holographic will; and (3) if the writing does not meet the requirements of the statute the instrument is not a will" (citing *Wilson v. Polite*, 281 So. 2d 843 (Miss. 1969))).

[16]     *Baker*, 24 So. 2d at 843 (quoting *Subscribe*, BLACK'S LAW DICTIONARY (2d ed. 1910)).

[17]     *Id.*

[18]     Schellinger, *supra* note 13.

[19]     *In re Armant's Will*, 9 So. at 51-52 (holding that the handwritten caption "Testament d'Aglae Armant" was insufficient to satisfy the Louisiana statute requiring holographs to be signed).

[20]     *Castañer v. Superior Court*, 81 P.R. 841, 843 (P.R. 1960).

shows a last subscription of the testamentary will, after the whole text preceding the signature is known and considered."[21]

The law of each of these jurisdictions features an idiosyncrasy that Alaska law does not share — in Mississippi's case, requiring "subscription" instead of a "signature," and in Louisiana's and Puerto Rico's cases, relying on French and Spanish law. We therefore join the overwhelming consensus of American courts and hold that Alaska law does not require a terminal signature for valid probate of a holographic will.

### B. Baker's Handwritten Name Satisfies The Signature Requirement Of AS 13.12.502(b).

Neither AS 13.12.502(b) nor Title 13 defines "signature." The relevant statutory text provides that a will is "valid as a holographic will . . . if the signature and material portions of the document are in the testator's handwriting."[22] The superior court concluded that whether a handwritten name is a signature depends on the intent of the testator: "if the context of a signature found in an introductory clause shows *intent* to create a valid will and there is no wont for a further mark of execution then the will is valid." (Emphasis in original.) Whaley and Milwicz argue that the court's conclusion defies the statutory command of AS 13.12.502(b) "by rendering the signature requirement nugatory."[23] Alva Marie Baker's name in the exordium clause, they argue, functions as an "[i]dentification of the testatrix," and is therefore "presumably a 'material portion' of the holographic will which must be in her handwriting." Since identification

---

[21]    *Id.* at 844.

[22]    AS 13.12.502(b).

[23]    Whaley and Milwicz never articulate what factors they believe *would* transform a handwritten name from a "material portion" of the will to a "signature." They merely agree that a handwritten name need not appear at the end of a document to constitute a signature, yet object to the superior court's use of the testatrix's intent to determine whether a handwritten name is a signature.

of the testator is a material portion of the will, the argument goes, it cannot also function as a signature. Whaley and Milwicz's analysis of AS 13.12.502(b) is incorrect.

The statute makes no such requirements of a holographic will. First, the statutory text neither indicates that the handwritten signature and handwritten material portions requirements are mutually exclusive, nor that a handwritten name cannot function as both identification of the testatrix and signature. The statute contains no requirement that a testatrix identify herself in addition to signing the document. Taken to its logical conclusion, this argument would mean that holographic wills with valid terminal signatures that also identify the testatrix — e.g., "The preceding will disposes of the entire estate of [signature]" — would be excluded from probate, an outcome the legislature almost certainly did not intend.

Second, AS 13.12.502(b) was added to the Alaska statutes in 1972 when Alaska adopted the Uniform Probate Code (UPC) in near-entirety.[24] Commentary from the UPC is thus instructive in interpreting the Alaska probate statutes.[25] And commentary accompanying the holograph provision of the UPC reveals that the "material portion" language was included in the UPC not to distinguish "material" portions from the signature portion, as Whaley and Milwicz argue, but instead to avoid disqualifying wills containing non-material printed language:

> By requiring only the "material portions of the document" to be in the testator's handwriting (rather than requiring, as some existing statutes do, that the will be "entirely" in the decedent's handwriting), a holograph may be valid even

---

[24] *See Jaworski v. Estates of Horwath ex rel. Streets*, 277 P.3d 753, 759 (Alaska 2012) (citing ch. 78, § 1, SLA 1972).

[25] *See, e.g.*, *In re Estate of Maldonado*, 117 P.3d 720, 728 (Alaska 2005) (relying on UPC commentary as legislative history in interpreting Alaska probate law).

though immaterial parts such as date or introductory wording are printed, typed, or stamped.

A valid holograph can also be executed on a printed will form if the material portions of the document are handwritten. The fact, for example, that the will form contains printed language such as "I give, devise, and bequeath to _____" does not disqualify the document as a holographic will, as long as the testator fills out the remaining portion of the dispositive provision in his or her own hand.[26]

Additionally, members of the Alaska House Judiciary Committee found Richard Wellman's writings on the Uniform Probate Code to be helpful in clarifying the concepts underlying the code.[27] And the practice manual Wellman would later edit explains that "[t]he test under the [Uniform Probate] Code is much more liberal" than under "present statutes authorizing holographic wills."[28] Thus, neither statutory text nor legislative history suggests that Alaska law prohibits a court from considering whether a handwritten identification of the testatrix is also a signature under AS 13.12.502.

---

[26]  UNIF. PROBATE CODE §2-502.B cmt. (UNIF. LAW COMM'N, amended 2010).

[27]  Minutes, H. Judiciary Comm. Hearing on S.B. 248, 7th Leg., 2d Sess. 169 (Apr. 11, 1972).

[28]  1 UNIFORM PROBATE CODE PRACTICE MANUAL 136 (Richard V. Wellman, ed., 2d ed. 1977). The manual's commentary on the lack of a requirement to date a holographic will sheds further light on the liberal standards in the Uniform Probate Code:

The Code does not require that a holographic will be dated, even though the failure to date may lead to fatal uncertainty if two or more wills exist and the order of their execution cannot be established. The draftsmen felt that it was preferrable [sic] to validate holographs for the usual situation when there appears to have been only one will, rather than to invalidate all writings that, for want of a date, might cause a problem concerning priority.

*Id.*

The next question, then, is under what circumstances Alaska law *permits* a court to interpret a handwritten name in the exordium clause as a signature. States with holographic will statutes that, like Alaska's, make no mention of any location where the testator's signature must be placed have taken one of two approaches. The first, as discussed above, is to judicially construe the signature requirement to require a signing at the end of the instrument.[29] But the majority of states follow a second approach, articulated by the Restatement (Third) of Property:

> The testator's handwritten name in freestanding form at the end of the document unquestionably satisfies the signature requirement. The testator's handwritten name in freestanding form at any other place on the document raises an inference that the testator "signed" the document.
>
> A person's name written in his or her own handwriting is not necessarily a signature. If the testator's name is not written in freestanding form, then there should be other evidence that the testator adopted the document as his or her will in order to count the handwritten name as a signature.[30]

---

[29]     *See* Part IV.A, *supra*.

[30]     RESTATEMENT (THIRD) OF PROP.: WILLS & DONATIVE TRANSFERS § 3.1 cmt. j (AM. LAW. INST. 1999); *see also, e.g.*, *Smith v. MacDonald*, 481 S.W.2d 741, 748 (Ark. 1972) (holding that a handwritten name in title and exordium clause constituted signature required by statute); *In re Estate of Glass*, 331 P.2d 1045, 1046, 1048 (Cal. App. 1958) (holding that a handwritten name in the heading of a document satisfied the signature requirement); *Burton v. Bell*, 380 S.W.2d 561, 568 (Tex. 1964) (holding that a handwritten name in exordium clause, "That I, Roy Wheeler Bell, . . . ," satisfied the signature requirement); Schellinger, *supra* note 13 ("Where the statute does not specify the place of signature, a signing in the exordium or introductory clause . . . . [is] sufficient where the instrument appears to be complete and there is no indication that the testator intended to add anything to the writing.").

American courts have repeatedly adopted versions of this approach when faced with a holographic will statute which merely requires a signature.[31]  Noting the similarity of Alaska's holograph statute to California's,[32] the superior court used California's case law as an example of this approach.  The court interpreted California Supreme Court cases *In re Bloch's Estate*[33] and *In re Morgan's Estate*[34] to stand for the proposition that a handwritten name in the exordium clause "is a valid execution . . . [unless] the instrument is otherwise incomplete or suggests that some further act of execution was contemplated or required."  The California approach is followed in virtually every other jurisdiction to have considered this question,[35] including in states that, like Alaska, have adopted the

---

[31]     *See* Schellinger, *supra* note 13 (collecting cases).

[32]     California Probate Code § 6111(a) provides that a will is "valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator."

[33]     248 P.2d 21, 22-23 (Cal. 1952).

[34]     253 P. 702, 703-04 (Cal. 1927).

[35]     *See Thrift Tr. Co. v. White*, 167 N.E. 141, 143 (Ind. App. 1929) (holding that "The will of Belle Stockman" in the exordium clause was sufficient to satisfy the signature requirement); *Ex parte Cardoza*, 109 A. 93, 95 (Md. 1919) ("For being written by himself, and his name in the will, 'tis a sufficient signing within the statute, which does not appoint where the will shall be signed, at the top, bottom[,] or margin, and therefore a signing in any part is sufficient." (quoting *Higdon v. Thomas*, 1 H. & G. 139, 145 (Md. 1827))); *In re Thomas' Estate*, 220 N.W. 764, 765 (Mich. 1928) ("The question is whether thus writing her name at the top of the will is a sufficient signing, within the meaning of the statute. . . .  It may be signed anywhere, providing there is an intent to adopt the name so written as the signature to the will."); *Watts v. Pub. Adm'r*, 4 Wend. 168, 168 (N.Y. 1829) (holding that handwritten name at the beginning of an instrument was sufficient to satisfy the signature requirement because the instrument was written "in a fair hand, engrossed on conveyancing paper, with a seal attached thereto, evincing much deliberation and foresight in its provisions and disposing of both real and
(continued...)

holographic will provision of the UPC.[36] Indeed, sufficiency of a handwritten name in the exordium clause to satisfy a signature requirement is a bedrock principle of probate law dating back to 1681.[37] We conclude that Alaska law permits courts to determine

---

[35](...continued)
personal property to a large amount"); *Peace v. Edwards*, 86 S.E. 807, 808 (N.C. 1915) ("The statute does, however, require the will to be signed; but it is well settled that, if the name of the testator appears in his handwriting in the body of the will, this is a signing within the meaning of the statute."); *In re McNair's Estate*, 38 N.W.2d 449, 455 (S.D. 1949) ("If it can be gathered from an inspection of the whole instrument that it is intended as a last will and testament, the statute is satisfied." (quoting *In re Brandow's Estate*, 240 N.W. 323, 324 (S.D. 1932))); *Lawson v. Dawson's Estate*, 53 S.W. 64, 65 (Tex. Civ. App. 1899) ("Our statute on the subject does not designate the place of signature, but merely requires that it be signed. We are therefore of the opinion that the place where the party affixes his signature is of secondary consequence if it sufficiently appears that the intent to execute was present at the time."); *Adams v. Field*, 21 Vt. 256, 260 (Vt. 1849) ("[I]f the name be inserted in such a manner, as to have the effect of authenticating the instrument, it is immaterial in what part of it the name be found . . . .").

[36]     *See In re Estate of Fegley*, 589 P.2d 80, 81 (Colo. App. 1978) ("[U]nder Colorado's version of the Uniform Probate Code the intent of the testator and not the location of his name is the crucial factor in determining whether a holographic will has been signed . . . ."); *Estate of Erickson v. Misaka*, 766 P.2d 1085, 1088 (Utah App. 1988) ("It is, of course, possible for a handwritten name at the beginning of the body of a will to be written with the intent that it be the requisite signature. However, there must be support in the evidence for that intent."), *aff'd sub nom. In re Estate of Erickson*, 806 P.2d 1186 (Utah 1991).

[37]     Schellinger, *supra* note 13 ("Many of the English and American cases have been based on the decision in Lemayne v. Stanley [[1681] 83 Eng. Rep. 545] where the name of the decedent appeared in the exordium, but the will had not otherwise been signed. The court held the instrument to be valid, saying: 'For being written by himself, and his name in the will, it is a sufficient signing within the statute, which does not appoint where the will shall be signed, in the top, bottom, or margin, and therefore a signing in any part is sufficient.' ").

-14-                                                          **7143**

"from an inspection of the instrument's language, form[,] and the relative position of its parts whether or not there is a positive and satisfactory inference that the decedent's name was placed in that location with the intention of executing the instrument."[38]

Having settled that handwritten names in the exordium clause are at least *possibly* sufficient to satisfy the signature requirement, the next question is whether the superior court erred in granting summary judgment on the basis that Baker's handwritten name, specifically, evinces signatory intent. As the Utah Supreme Court recognized, "[i]f the signature appears at the end of an instrument, . . . signatory intent clearly may be inferred. . . . The problem of proof of signatory intent is more difficult where . . . the signature appears somewhere other than at the end of an instrument."[39]

The Arkansas Supreme Court identified two evidentiary sources to determine whether there is sufficient proof of signatory intent:

> When the name is used to identify the decedent as the author of the alleged will as in *Estate of Kinney*, ('I Anna Leona Graves Kinney, do bequeath all my possessions to my four sisters') . . . and in addition the instrument appears to be a complete testamentary document, it may reasonably be inferred that the name was placed where it was with the intention of executing the instrument. In such cases the name is linked to the alleged testamentary act and the probabilities that it was intended as a signature are strong.[40]

Here, the handwritten name is used to identify the decedent and that the instrument is a complete testamentary document. It therefore may be reasonably inferred that Baker's name was so placed with the intention of executing the instrument.

---

[38] *In re Bloch's Estate*, 248 P.2d 21, 22 (Cal. 1952).

[39] *In re Estate of Erickson*, 806 P.2d at 1189.

[40] *Nelson v. Texarkana Historical Soc. & Museum*, 516 S.W.2d 882, 884 (Ark. 1974) (citations omitted).

The first indication that the exordium clause is intended as a signature is that it identifies the decedent as the author of the alleged will. To determine whether a handwritten name is a signature or simply part of the text of the will, "it is necessary to consider the functions of the signature. A signature on a will accomplishes two functions: [f]irst, it identifies the writing as being that of the signator; second, and more importantly, the signature evidences finality."[41] Here, the first two lines of Baker's will read: "My name is <u>Alva</u> <u>Marie</u> <u>Baker</u> – My '<u>will</u>' when I pass on is to go as follows!" That text both identifies the testatrix and indicates that she describes the document as a final expression of her testamentary intent; courts have generally deemed such an expression to be sufficient as a signature when a holographic will otherwise evinces completeness.[42] Whaley and Milwicz briefly argue that Baker's handwritten name is not a signature because she typically signed documents using only her middle initial in place of her middle name, i.e. "Alva M. Baker."[43] This argument is only briefed in passing, so we consider it waived.[44]

---

[41] Richard Lewis Brown, *The Holograph Problem — The Case Against Holographic Wills*, 74 TENN. L. REV. 93, 118 (2006).

[42] *See, e.g.*, *In re Morgan's Estate*, 253 P. 702, 704 (Cal. 1927) (holding that a will beginning "Last will and testament of Ynez Morgan" was signed); *In re McMahon's Estate*, 163 P. 669, 669 (Cal. 1917) (holding that an exordium clause reading "This is the last will and testament of Elizabeth R. McMahon" was a signature because the testatrix had "sufficiently in law on the face of the instrument adopted the signature written by herself in the exordium of her will as her signature in execution of it").

[43] "Appellants are unaware of any evidence in the record that the decedent signed checks, contracts, deeds, Christmas cards[,] or other important or unimportant documents using her full legal name, as opposed to her middle initial."

[44] *See Hagan v. Strobel*, 353 P.3d 799, 805 (Alaska 2015) ("[W]here a point
(continued...)

The second evidentiary question is whether the document as a whole appears to be a complete testamentary document. "If it is complete, a handwritten name in an exordium or elsewhere in the will may be considered a signature."[45] On the other hand, "[i]f the instrument propounded as a will appear from its contents and form to be unfinished and incomplete, a presumption arises that the writer did not intend the paper in that condition to operate as his will."[46]

Other courts have concluded that an instrument has sufficient indicia of completeness when the document was written "with studied care,"[47] where the document "reasonably support[ed] the conclusion that 'the writer *had done everything* that he intended to do,' "[48] where the document "contains no blanks or anything that would indicate that it was not [a] last will and testament,"[49] and where the document indicated

---

[44](...continued)
is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (alteration in original) (quoting *Glover v. Ranney*, 314 P.3d 535, 545 (Alaska 2013))). We note that even if the argument were not waived, one might expect that a testator who uses a more formal version of his or her name is more likely to possess the requisite signatory intent.

[45]     *In re Estate of Erickson*, 806 P.2d 1186, 1189 (Utah 1991); *see also* Schellinger, *supra* note 13.

[46]     M.F.L., Annotation, *Testator's Name in Body of Instrument as Sufficient Signature Where Statute Does Not Require Will To Be Signed at End*, 29 A.L.R. 891 (1924) (citing *Jones v. Jones*, 60 Ky. (3 Met.) 266 (Ky. 1860); *Watts v. Pub. Adm'r*, 4 Wend. 168 (N.Y. 1829); *Crutcher v. Crutcher*, 11 Hump. 377 (Tenn. 1850)).

[47]     *In re Kinney's Estate*, 104 P.2d 782, 784 (Cal. 1940).

[48]     *Estate of Williams*, 66 Cal. Rptr. 3d 34, 43 (Cal. App. 2007) (emphasis in original) (quoting *In re Brooks' Estate*, 4 P.2d 148, 149 (Cal. 1931)).

[49]     *Hall v. Brigstocke*, 58 S.E.2d 529, 533 (Va. 1950).

in the text that it was a will.[50]  The superior court's analysis aligns with these types of

indicia.  And the Baker will is unlike other purported wills courts have rejected based on

perceived incompleteness.  In *In re Estate of Erickson*, for instance, the Utah Supreme

Court determined that an instrument was incomplete because it was written on several

notecards and there was nothing to "indicate[] that the instrument actually end[ed] at the

bottom of the third card."[51]  Other courts have determined that an instrument is

incomplete where the will terminated abruptly, or where text at the end of the document

suggested that the document would be incomplete without a terminal signature.[52]  Unlike

these cases, nothing about the form or content of the Baker will reflects that Baker did

not conceive of the document as a final disposition of her property or that she wished to

execute the document at a later date.

The superior court determined that the will was complete.  In doing so, it

considered that (1) "[t]he instrument is hand written on two pages of decorative

station[e]ry"; (2) "[t]he property division appears to follow an order of material

importance"; (3) "[t]he writing becomes progressively smaller as the document continues

and ends at the bottom of the second page . . . suggest[ing] that Ms. Baker tried to

squeeze the last provisions onto the second page"; (4) "the document ends with more

---

[50]	*Id.*

[51]	806 P.2d 1186, 1190 (Utah 1991).

[52]	*See In re Bernard's Estate*, 239 P. 404, 405 (Cal. 1925) (holding that handwritten name in the exordium clause was not a signature because the document terminated abruptly after a specific bequest); *In re Estate of Fegley*, 589 P.2d 80, 82 (Colo. App. 1978) (holding that handwritten name in exordium clause was not a signature because the phrase "Witness my hand on this 16th day of September, 1976" followed by a blank signature space indicated that the testatrix intended to sign the document later); *Davis v. Davis*, 207 P. 1065, 1067 (Okla. 1922) (same phrase and result as *Fegley*).

general property and includes potential (rather than specific) heirs — a reasonable point of conclusion"; (5) "[t]here is no room below the final numbered paragraph for any other writing"; and (6) "there are no lines or textual indications in text that otherwise suggest the will required an execution beyond the initial declaration of testamentary intent." This characterization of the document is not in dispute. The question is whether this, as a matter of law, is sufficient to show completeness. We agree with the superior court that it is.

Whaley and Milwicz do not purport to appeal the superior court's determination that the form and content of the document indicate that the document is complete and appeal only the superior court's "determination that the identification was a signature." But Whaley and Milwicz do make two arguments that the will is incomplete. The first is that some of Baker's assets — a parcel of land on the Kenai Peninsula and a deed of trust and promissory note — were not disposed of in the will. But the fact that the distribution is not totally complete is irrelevant: the inquiry is not whether a decedent completely distributed all of her property, but whether the instrument is itself a completed instrument.[53] The second is that Baker had three years between penning the document and passing away in which to petition the court for a determination that the purported will was a valid will, and the fact that she did not do so "speaks volumes about [her] intention[] as to whether the purported holographic will was valid." But Alaska law does not *require* a testator to petition a court to validate her will; it merely provides that "an interested party *may* petition the court to determine before the

---

[53] *In re Estate of Erickson*, 806 P.2d at 1189-90 ("The statutes do not require that a holograph must dispose of all the testator's property, just as there is no such requirement for formal wills. 'Completeness' in this context means that the instrument must appear to be a completed instrument, not a complete disposition of all the decedent's property.").

testator's death that the will is a valid will."[54] This argument is therefore unavailing. Baker's will is complete as a matter of law.

## V.    CONCLUSION

The superior court correctly concluded that a testator's handwritten name in the exordium clause of a purported holographic will is sufficient to satisfy the signature requirement in AS 13.12.502(b) unless the instrument is otherwise incomplete. It also correctly concluded that the Baker will was complete when it admitted the instrument to formal probate.  We AFFIRM.

---

[54]    AS 13.12.530 (emphasis added).